# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MICHAEL L. FERGUSON, *et al.*,

                      Plaintiffs,

       v.

RUANE, CUNNIFF & GOLDFARB INC., *et al.*

                  Defendants.

17 Civ. 6685 (ALC) (BCM)

**MEMORANDUM OF LAW ON BEHALF OF THE ARBITRATION CLAIMANTS IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CERTIFICATION OF A MANDATORY CLASS ACTION**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ................................................................................................................ 3

    I.   *Cooper* is Inapposite Since the Plan Agreed to Arbitration ................................ 3

        A.  The Plan Includes an Arbitration Agreement that Explicitly Applies. ................ 3

        B.  Relevant Authority Confirms that the Plan's Adoption of Mandatory Arbitration is Dispositive ................................................................................. 6

        C.  Any Plan Representative and DST *Must* Comply with the Plan's Provision Allowing for Individual Arbitration ..................................................... 9

    II.  *Cooper* is Irrelevant Since the Parties *Agree* to Resolve their Dispute in Arbitration ........ 9

    III. *Cooper* Affirms that Plaintiffs who Purport to Represent the Plan *as a Whole* Must Demonstrate their Suitability to Serve as Representatives of other Plan Stakeholders ..... 11

    IV. The *Ferguson* Plaintiffs do Not Represent the Interest of Other Plan Stakeholders ........ 16

    V.  The Court May Not Enjoin the Arbitration Claimants ...................................... 23

    VI. Alternatively, the Court should Allow Discovery by the Arbitration Claimants ............. 25

CONCLUSION ............................................................................................................ 26

## TABLE OF AUTHORITIES

### Cases

*Amaro v. Continental Can Co.*, 724 F.2d 747 (9th Cir. 1984) .......................................................... 7

*American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013) ................................. 7

*Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475 (8th Cir. 1988)...................... 11

*AT&T Mobility LLC v. Concepcion,* 563 U.S. 333 (2011)............................................................. 17

*Avilez v. Pinkerton Gov't Servs.*, 596 F. App'x 579 (9th Cir. 2015) .............................................. 21

*Benacquisto v. Am. Exp. Fin. Corp.*, 2014 WL 3418692 (D. Minn. July 14, 2014) ..................... 11

*Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116 (2d Cir. 1991)........................................ 11

*Brown v. Firstsource Advantage, LLC*, 2018 WL 4538412 (E.D. Pa. Sept. 21, 2018).................. 17

*Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-CV-04456-PJH, 2018
    WL 6727825 (N.D. Cal. Dec. 21, 2018) .................................................................................. 21

Coan v. Kaufman, 457 F.3d 250 (2d Cir. 2006).................................................................... 2, 12, 15

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949) ....................................................... 18

*Conde v. Open Door Marketing, LLC*, 223 F. Supp. 3d 949 (N.D. Cal. 2017) ............................ 21

*Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021) .............................. passim

*Covell v. Heyman*, 111 U.S. 176 (1884)........................................................................................ 23

*Cusack-Acocella v. Dual Diagnosis Treatment Ctr., Inc.*, 2019 WL 7172597 (C.D. Cal. Oct. 7,
    2019)......................................................................................................................................... 12

*Dean Witter Reynolds, Inc. v. Fleury*, 138 F.3d 1339 (11th Cir. 1998) ........................................ 10

*Donovan v. Robbins*, 752 F.2d 1170 (7th Cir. 1985) .................................................................... 19

*Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. 2019) .............................. 1, 7, 8, 13

*Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. 2019) ................................................. 7

*Ducharme v. DST Sys., Inc.*, 2017 WL 7795123 (W.D. Mo. June 23, 2017) ............................... 14

*Elouarrak v. Firstsource Advantage, LLC*, 2020 WL 291364 (N.D. Ill. Jan. 21, 2020)............... 17

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) .................................................................... 5, 11

*Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314 (5th Cir. 1994) ................................................ 10

*First Union Sec., Inc. v. Lorelli*, 168 N.C. App. 398 (2005).......................................................... 11

*Fisher v. JPMorgan Chase & Co.*, 303 F. App'x 979 (2d Cir. 2008)............................................ 13

*Fisher v. Wheat First Sec., Inc.*, 62 F. App'x 472 (4th Cir. 2003) ............................................... 10

*Ganguly v. Charles Schwab & Co.*, 2004 WL 213016 (S.D.N.Y. Feb. 4, 2004)........................... 10

*Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000) .............................................. 16

*Hayman Cash Reg. Co. v. Sarokin*, 669 F.2d 162 (3d Cir. 1982) ................................................. 23

*Hebbard v. Colgrove*, 28 Cal. App. 3d 1017 (1972) ...................................................... 21

*Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219 (2d Cir. 2006) ........................... 25

*Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745 (11th Cir. 2006)............................... 18

*Hoffman v. Blaski*, 363 U.S. 335, 348–49 (1960) ........................................................ 23

*In re Am. Express Fin. Advisors Sec. Litig.,* 672 F.3d 113 (2d Cir. 2011)......................... 5

*In re Computer Scis. Corp. ERISA Litig.*, 2008 WL 7527874 (C.D. Cal. Sept. 2, 2008) ............. 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016) ...................................................................................................... 16

*In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*, 71 F.3d 298 (8th Cir. 1995) 23, 24

*In re Prudential Ins. Co. of Am. Sales Prac. Litig. All Agent Actions*, 133 F.3d 225 (3d Cir. 1998) ...................................................................................................... 25

*In re Sokolowski*, 205 F.3d 532 (2d Cir. 2000) ............................................................ 11

*Jensen v. Cablevision Systems Corp.*, 372 F. Supp. 3d 95 (E.D.N.Y. 2019) ................... 21

*John Blair Commc'ns, Inc. Profit Sharing Plan v. Telemundo Grp., Inc. Profit Sharing Plan*, 26 F.3d 360 (2d Cir. 1994) .................................................................................... 13

*Kramer v. Smith Barney*, 80 F.3d 1080 (5th Cir. 1996) ................................................ 11

*Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019)...................................................... 17

*LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248 (2008).......................................... 12

*Lee v. Burkhart*, 991 F.2d 1004 (2d Cir.1993) ............................................................ 12

*Macedonia Distrib., Inc. v. S-L Distribution Co., LLC*, No. SACV171692JVSKESX, 2020 WL 610702 (C.D. Cal. Feb. 7, 2020) ........................................................................ 21

*Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985) ...................... 12

*Mehler* v. *Terminix Int'l Co. L.P.*, 205 F.3d 44 (2d Cir. 2000) ..................................... 5, 10

*Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 666 F.3d 68 (2d Cir. 2011) 12

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983) ........ 14, 25

*Munro v. Univ. of S. California*, 896 F.3d 1088 (9th Cir. 2018)................................... 6, 7

*Murphy v. Canadian Imperial Bank of Com.*, 709 F. Supp. 2d 242 (S.D.N.Y. 2010) .................. 12

*O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087 (9th Cir. 2018) .................................... 21

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)........................................................ 17, 18

*Peerless Imps., Inc.* v. *Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924 (2d Cir. 1990)............................................................................................................. 4

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013) ...................................................... 20

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985) ................................................ 17

iv

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) ........................................ 24

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 7 F.3d 1110 (3d Cir.1993)................... 11

*Quinlan Macy's Corporate Services, Inc.*, No. CV-12-00737-DDP, 2013 WL 11091572 (C. D. Cal. Aug. 22, 2013) ........................................................................................................................ 21

*Renton v. Kaiser Found. Health Plan, Inc.*, No. C00-5370RJB, 2001 WL 1218773 (W.D. Wash. Sept. 24, 2001)............................................................................................................................ 21

*Saylor v. Bastedo*, 78 F.R.D. 150 (S.D.N.Y. 1978)......................................................................... 26

*Smith v. Stockwell Const. Co.*, 2011 WL 6208697 (W.D.N.Y. Dec. 14, 2011) ..................... 12, 13

*Southland Corp. v. Keating*, 465 U.S. 1 (1984) ............................................................................... 5

*St. Louis Amusement Co. v. Paramount Pictures*, 61 F. Supp. 854 (E.D. Mo. 1945)................... 14

*Stott v. Cap. Fin. Servs., Inc.*, 277 F.R.D. 316 (N.D. Tex. 2011) .................................................. 23

*Tan v. Grubhub, Inc.*, No. 15-cv-05128-JSC, 2016 WL 4721439 (N.D. Cal. July 19, 2016) ....... 21

*Tech. & Intellectual Prop. Strategies Grp. PC v. Insperity, Inc*., 2012 WL 6001098 (N.D. Cal. Nov. 29, 2012)................................................................................................................................ 17

*Travelers Cas. & Sur. Co. of Am. v. IADA Servs., Inc.*, 497 F.3d 862 (8th Cir. 2007)................. 19

*Tschudy v. J.C. Penney Corp., Inc.*, No. 11CV1011 JM (KSC), 2015 WL 8484530 (S.D. Cal. Dec. 9, 2015)........................................................................................................................................ 21

*VanPamel v. TRW Vehicle Safety Sys., Inc.*, 723 F.3d 664 (6th Cir. 2013) .................................. 11

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ*., 489 U.S. 468 (1989) ...... 5

*Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791 (9th Cir. 2017)............................. 6

*Williams v. Imhoff*, 203 F.3d 758 (10th Cir. 2000) ........................................................................ 11

*Zieger v. Advance America*, C.A. No. 13-1614-GMS, 2014 WL 7388365 (D. Del. Dec. 29, 2014) ........................................................................................................................................................ 21

The Arbitration Claimants—consisting of more than 550 Plan participants who have exercised their contractual, statutory, and constitutional rights to arbitrate their claims against DST Systems, Inc. ("DST") and Ruane Cunniff and Goldfarb, Inc. ("RCG"), as well as their legal rights as determined by the U.S. District Court for District of Missouri (and whose Plan accounts comprise over one-third of the Plan's total assets), submit this opposition to the *Ferguson* Plaintiffs' motion for the certification of a *mandatory* class (Dkt. No. 300). For the reasons set forth below, as well as for those set forth in the memoranda previously submitted by or on behalf of the Arbitration Claimants, all of which are incorporated as if fully set forth herein,[1] the motion should be *denied*. Rather than restate their arguments in opposition to the motion, however, the Arbitration Claimants address the limited relevance of the Second Circuit's *Cooper* opinion, as requested by the Court.[2]

## PRELIMINARY STATEMENT

While espousing the importance of *protecting* the interests of Plan participants, the three *Ferguson* Plaintiffs are actively trying to *destroy* and *extinguish* the contractual, statutory, and constitutional rights of more than 550 Plan participants who, at the direction of <u>the Plan</u>, <u>DST Systems, Inc.</u>, *and* <u>the U.S. District Court for the District of Missouri</u>, have filed—and are overwhelmingly *winning*—claims for breach of fiduciary duty. (*See e.g.,* Dkt. Nos. 265, 266, 300.) Rather than champion and support the Arbitration Claimants' unparalleled success (which pose <u>*no*</u>

---

[1] The Arbitration Claimants specifically call the Court's attention to the following: Dkt. Nos. 132 (letter from Arbitration Claimants); 135 (reply letter from Arbitration Claimants); 171 (Joint Memorandum); 172 (Declaration); 182 (Opposition to Motion for Class Certification); 203 (letter from Arbitration Claimants); 216 (letter from Arbitration Claimants); 217 (letter from Arbitration Claimants); 258 (letter from Arbitration Claimants); 271 (Memorandum); 272 (Declaration); 291 (letter from Arbitration Claimants); and 295 (letter from Arbitration Claimants).

[2] In a letter submitted to Court more than a year ago, the Arbitration Claimants cautioned that "*Cooper* is irrelevant here" since "the Court of Appeals in *Cooper* was not even asked to consider the impact of the Plan's adoption of the arbitration agreements which, in *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019), was a critical fact." (Dkt. No. 135.) The Arbitration Claimants also asserted that since "DST is not even a party in the *Cooper* case (it *was* a party in *DuCharme*)[,] the right of arbitration against DST will persist regardless of the outcome in *Cooper*. These observations, made more than a year ago, remain true today.

1

_threat_ to the interests of others[3]), the three _Ferguson_ Plaintiffs—together with DST—have repeatedly tried to _stop_ and _prevent_ the arbitrations from going forward. (_See e.g.,_ Dkt. No. 170.)

In _Coan v. Kaufman_, the Court speculated that the plaintiff _might_ fail to protect the interests of those plan participants she purported to represent. 457 F.3d 250, 264 (2d Cir. 2006). That was enough to affirm the dismissal of her claims. _Id._ Here, the Court need not speculate at all—the _Ferguson_ Plaintiffs _admit_ to wanting to destroy the significant and legally protected rights and interests of hundreds of Arbitration Claimants who they seek to represent. Moreover, in a rare display of candor to the Court, the _Ferguson_ Plaintiffs _admitted_ that their efforts to stamp out the Arbitration Claimants' ongoing success were motivated _not_ by the interests of the Plan participants, but by _the Defendants'_ own self-serving "interest in achieving complete peace" (at a deeply discounted price). (Dkt. No. 266-1 at 31.)

What is more, while purporting to act on behalf of the DST Systems, Inc., 401(k) Profit Sharing Plan (the "Plan"), the _Ferguson_ Plaintiffs have repeatedly failed to disclose that _the Plan itself_ includes a provision, binding on all participants, that "make[s] clear that [the] Arbitration Policy applies to all claims arising out of or relating to the Plan."[4] The _Ferguson_ Plaintiffs hope that by their lack of candor, the Court will be misled.

The Court, however, must be guided by the facts. In this case, it is _a fact_ that the Plan adopted the Arbitration Agreement and expressly made clear that the Arbitration Agreement's broad scope covers claims arising out of or relating to the Plan. _**That is dispositive**_.

---

[3] On the contrary, the Arbitration Claimants' overwhelming success in repeatedly proving DST's liability and the Plan's entitlement to damages has strengthened the hand of all Plan participants and beneficiaries, as well as that of the U.S. Department of Labor.

[4] The _Ferguson_ Plaintiffs first tried evading the Plan's adoption of the Arbitration Agreement by _falsely_ asserting that "the Plan did not contain an arbitration agreement at the time _Cooper_ was filed." (Dkt. No. 285 at 6, fn. 7.) That was wrong. Now, rather than be forthright with the Court, they simply avoid it altogether.

2

## ARGUMENT

### I.   *Cooper* is Inapposite Since the Plan Agreed to Arbitration

The Second Circuit's decision in *Cooper v. Ruane Cunniff & Goldfarb Inc.*, declining to *require* arbitration of an ERISA § 502(a)(2) claim against RCG, rested on whether the specific language of the DST Arbitration Agreement (the "Arbitration Agreement" or "Agreement") provided an adequate basis for finding that the parties intended the Agreement to reach claims relating to the Plan against a third-party investment advisor. The parties in *Cooper*, however, omitted a critical fact from the record: On February 26, 2016, DST duly amended the Plan to "make clear that [the] Arbitration Policy applies to all claims *arising out of or relating to **the Plan**.*"

### A.   The Plan Includes an Arbitration Agreement that Explicitly Applies.

On February 26, 2016, DST amended the Plan, explaining:

> **WHEREAS,** the Company currently maintains an arbitration policy in effect in the DST Systems, Inc. Associate Handbook applicable to certain Company employees, which policy requires, among other things, mandatory arbitration and waiver of class actions for all claims arising out of or relating to a Company-sponsored ERISA plan other than those claims for benefits due under the terms of a Company sponsored ERISA benefit plan (the "Arbitration Policy");

> **WHEREAS,** the Committee desires to amend the Plan ***to make clear that the Arbitration Policy applies to all claims arising out of or relating to the Plan*** other than those claims for benefits due under the terms of the Plan[.][5]

The Amendment, which was made effective January 1, 2016, states:

> **9.11   MANDATORY ARBITRATION AND CLASS ACTION WAIVER.**

> Unless prohibited by ERISA, any and all claims arising out of or related to the Plan, other than claims for benefits due under the terms of the Plan, are subject to mandatory arbitration and class action waiver as provided under the Arbitration Policy in effect as part of the DST Systems, Inc. Associate Handbook (the "Arbitration Policy") to the extent applicable to Company Employees, ***the terms of which are incorporated herein by reference***.[6]

---

[5] *See* 2016-1 Amendment to the Plan at 1 (the "2016-1 Amendment"), Ex. C to Schermerhorn Dec. at ¶ 7 (emphasis added). "Schermerhorn Dec." refers to the Declaration of Andrew Schermerhorn in Opposition to the Renewed Motion for Class Certification, dated May 3, 2021 and filed contemporaneously herewith.

[6] *Id.* at 4 (emphasis added).

3

Before this case was even filed, DST affirmed to the U.S. District Court in Missouri that "[t]he Amendment was duly adopted by the Compensation Committee in accordance with the amendment provisions laid out in the Plan and is therefore *valid and binding on the Plan*."[7] Additionally, as DST explained when it sought and obtained an order compelling individual arbitration in Missouri, the Amendment "incorporates the terms of DST's Arbitration Agreement *into the Plan*, and thereby *explicitly binds the Plan* to the terms of that Agreement."[8]

When Mr. DuCharme, one of the Arbitration Claimants, suggested that binding Circuit precedent should not apply since he was suing *on behalf of the Plan*, DST responded:

> Mr. Ducharme argues that because he is purportedly suing in a representative capacity on behalf of the Plan -- and not in his individual capacity -- and because the Plan did not enter into an arbitration agreement, he is somehow not bound by the Arbitration Agreement. As discussed below, those arguments fail. First, the Plan *did agree* to arbitrate claims arising out of or related to the Plan. Second, the plain terms of the Arbitration Agreement *unambiguously encompass Mr. Ducharme's claims*.[9]

Of course, DST was correct—it remains binding precedent that a court must "compel arbitration whenever a party has asserted a claim … that on its face is governed by the contract." *Peerless Imps., Inc. v. Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924, 927 (2d Cir. 1990). And "if there is a reading of the various agreements that permits the [a]rbitration [c]lause to remain in effect," a court "must choose it." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 133 (2d Cir. 2011). Likewise, if "the agreement is a broad one, ... the court must compel

---

[7] *See* DST's Reply in Support of Motion to Compel Arbitration ("DST's Reply"), Ex. G to Schermerhorn Dec., at ❡ 13 (citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (holding that "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans")) (emphases added). *See also Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 58–59 (1st Cir. 2014) ("It is clear beyond hope of contradiction that sponsors of ERISA plans have considerable latitude in plan design...."). For example, a plan sponsor can design a plan that requires all benefit claims to be brought within a particular statute of limitations, *Heimeshoff*, 571 U.S. at 108, or that requires plan-related claims to be brought in a particular venue, *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 931–34 (6th Cir. 2014). More to the point, a sponsor can design a plan that requires plan-related claims to be brought in arbitration. *Chappel v. Lab. Corp. of Am*., 232 F.3d 719, 724 (9th Cir. 2000).
[8] *See* DST's Sur-Sur-Reply in Support of its Motion to Compel Arbitration at 2, Ex. I to Schermerhorn Dec., at ❡ 18.
[9] *See* DST's Reply, Ex. G to the Schermerhorn Dec. at ❡ 13 (emphases added).

4

arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000)  (quoting *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995)).[10]

> Here, as DST stated to the U.S. District Court in Missouri:
>
> [B]reach of fiduciary duty claims are ***explicitly covered*** by the language of the Plan, which states that "any and all claims arising out of or related to the Plan, other than claims for benefits due under the terms of the Plan, are subject to mandatory arbitration and class action waiver as provided under" DST's Arbitration Policy. Indeed, the Amendment provides "that the Arbitration Policy applies to all claims arising out of or relating to the Plan other than those claims for benefits due under the terms of the Plan." ***That is dispositive***.[11]

In *Cooper*, the Court stated that it would ***not*** adopt a "countertextual reading of an arbitration agreement that explicitly applied to a given circumstance." *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 185 (2d Cir. 2021). Indeed, the Court declared that only "in the *absence* of any such terms" that explicitly apply would it construe an arbitration agreement as inapplicable to claims arising out of or relating to an ERISA plan. *Id.* at 176. Here, as DST has repeatedly asserted, the Plan *explicitly states* that "the Arbitration Policy applies to all claims arising out of or relating to the Plan." That, again, "***is dispositive***."[12]

---

[10] Since "the purpose of the act was to assure those who desired arbitration…that their expectations would not be undermined by federal judges," *Southland Corp. v. Keating*, 465 U.S. 1, 13 (1984), the Act "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms," *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989), and further "requires that [federal courts] rigorously enforce agreements to arbitrate, *even if the result is 'piecemeal' litigation*.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

[11] DST's Reply, Ex. G to the Schermerhorn Dec. at ¶ 13 (emphases added). Without any hint of irony, DST now claims that it has argued for "the proposition that ERISA claims like those here may be brought only on behalf of the plan, and not for individual recovery." *Canfield, et al. v. SS&C Technolohies Holdings, Inc., et al.*, No. 18-CV-08913 (ALC), ECF No. 118, at 11. It is a complete farce. In the matter of *DuCharme v. DST Systems, Inc., et al.*, No. 4:17-cv-00022, DST moved the Court "to compel Mr. Ducharme to arbitrate his ERISA claims with DST ***on an individual basis*** in accordance with the terms of the Arbitration Program and Agreement." *See* Ex. D to the Schermerhorn Dec. at ¶ 8 (emphases added). *See also* Schermerhorn Dec. at ¶¶ 14-16, 18-19. DST even sent notice to all Plan participants advising them of the right to pursue *individual* arbitration. (Dkt. No. 172-12.) Only now, when faced with hundreds of arbitrations *that it compelled*, does DST insist that claims for may not be brought for individual recovery.

[12] The Court in *Cooper* was never told that breach of fiduciary duty claims are ***explicitly covered*** by the language of

5

**B.**     **Relevant Authority Confirms that the Plan's Adoption of Mandatory Arbitration is Dispositive**

The significance of the Plan's adoption of the Arbitration Agreement, which the Court in *Cooper* never had an opportunity to consider, is best illustrated by a series of cases from the Ninth Circuit. In the first case, the Court considered whether current and former employees of the University of Southern California should be compelled to arbitrate their collective claims for breach of fiduciary duty in relation to the administration of two ERISA plans. *Munro v. Univ. of S. California*, 896 F.3d 1088, 1090 (9th Cir. 2018). While each of the individual employees was required to sign an arbitration agreement as part of his or her employment contract, there was no indication that the two ERISA plans required individual arbitration. *Id.* Accordingly, relying most heavily on its prior decision in *Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791 (9th Cir. 2017),[13] the Court decided that "[b]ecause the parties consented only to arbitrate claims brought on their own behalf," and because the ERISA breach of fiduciary duty claim was "brought on behalf of the Plans," the dispute fell outside the scope of the arbitration agreement. *Id.* at 1092.

Thus, in *Munro*, the Court held that an individual participant cannot agree to arbitrate an ERISA § 502(a)(2) claim because such a claim belongs to a plan. 896 F.3d at 1092. The upshot of *Munro*, of course, is that a plan *can* consent to the individual arbitration of a § 502(a)(2), in which event, individual arbitration will be enforced if sought by the Plan or any of its participants.[14]

The employees in *Munro* also argued that claims for breach of fiduciary duty under ERISA are not arbitrable as a matter of law, citing the Ninth Circuit's decision in *Amaro v. Continental Can Co.*, 724 F.2d 747 (9th Cir. 1984). In *Amaro*, the Court held that ERISA's mandated "minimum

---

the Plan. Thus, it was unaware that, in fact, it was applying a countertextual reading. *Cooper* is therefore inapposite to the facts of this case where, by our efforts, a full disclosure has been made to the Court.

[13] Which the Court in *Cooper* also relied upon as providing "helpful insight." *Cooper*, 990 F.3d at 182.

[14] Nowhere does ERISA provide that § 502(a)(2) claims are "representative." Section 502(a)(2) merely authorizes a claim for relief under ERISA § 409, which, in turn, makes a fiduciary liable for any losses to a plan resulting from a breach. See 29 U.S.C. §§ 1109(a), 1132(a)(2).

standards [for] assuring the equitable character of [ERISA] plans" could not be satisfied in an arbitral proceeding. 724 F.2d at 752. However, given the Court's decision in *Munro* that the claims asserted fell outside the arbitration clauses, it did not decide the "arbitrability" question and, instead, left "the issue of *Amaro*'s viability for another day." *Munro*, 896 F.3d at 1094. That day came on August 20, 2019 in two separate opinions in the case of *Dorman v. Charles Schwab Corp.*

In *Dorman*, the plaintiff brought claims, again on behalf of an ERISA plan pursuant to ERISA § 502(a)(2), to recover losses resulting from the defendants' fiduciary breaches. Though the plaintiff was not bound by an employment-related arbitration agreement, the ERISA plan itself included a provision requiring that claims arising out of or relating to the plan must be resolved in arbitration "on an individual rather than collective basis." *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 513 (9th Cir. 2019) ("*Dorman II*").[15] Thus, the Court was called upon to resolve whether plan participants were bound by an arbitration provision *in the plan*.

In the first opinion, the Court held that "[i]n light of intervening Supreme Court case law, including *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013)," its holding in *Amaro*—that ERISA's mandated "minimum standards [for] assuring the equitable character of [ERISA] plans" could not be satisfied in an arbitral proceeding—"*is no longer good law.*" *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107, 1109 (9th Cir. 2019) ("*Dorman I*") (emphasis added). Indeed, in *American Express Co.*, the Supreme Court ruled that arbitrators are competent to interpret and apply federal statutes. *Am. Express Co.*, 570 U.S. at 233. Thus, since this intervening Supreme Court authority was irreconcilable with the holding in *Amaro*, *Amaro* was overruled. *Id.* at 1112.

---

[15] The provision stated that "[a]ny claim, dispute or breach arising out of or in any way related to the Plan shall be settled by binding arbitration…" and required that claims be brought "on an individual basis only, and not as a class, collective or representative basis" and that participants "waive the right to commence, be a party to, or be an actual or putative class member of any class, collective or representative action arising out of or relating to the Plan…" *Dorman v. Charles Schwab Corporation, et al.*, 4:17-cv-00285-CW (N.D. Ca.), ECF No. 51-2, at p. 65.

7

In its second opinion, the Ninth Circuit held that since ERISA § 502(a) claims "belong to the Plan," and since <u>the Plan</u> *expressly agreed* that claims "arising out of" or "related to" the Plan must be resolved in arbitration on an individual rather collective basis, claims for breach of fiduciary duty on behalf of the Plan "fall within the scope of the Provision." *Dorman II*, 780 F. App'x at 513. The Court then went on to hold that:

> Although § 502(a)(2) claims seek relief on behalf of a plan, the Supreme Court has recognized that such claims are inherently individualized when brought in the context of a defined contribution plan like that at issue. *LaRue* stands for the proposition that a defined contribution plan participant can bring a § 502(a)(2) claim for the plan losses in her own individual account. The Plan and Dorman both agreed to arbitration on an individualized basis. This is consistent with *LaRue*.

*Dorman II*, 780 F. App'x at 514.

Accordingly, the case was returned to the district court "with instructions for the district court to order arbitration of individual claims limited to seeking relief for the impaired value of the plan assets in the individual's own account resulting from the alleged fiduciary breaches." *Id.*[16]

*Munro* and *Dorman* fittingly correspond to *Cooper* and the present case. Whereas in *Cooper*, since there was no mention or indication that the Plan had agreed to arbitration, arbitration was not required (just like in *Munro*). But in *this case*—and in the arbitrations—the record is clear that the Plan *did agree* to individual arbitration. Thus, just as in *Dorman*, the Arbitration Agreement applies to claims for breach of fiduciary duty under ERISA.[17]

---

[16] More recently, in *In re Becker*, No. 20-72805, 2021 WL 1219745 (9th Cir. Apr. 1, 2021), the Ninth Circuit reaffirmed that its decision in *Dorman* "makes clear" that an ERISA plan may require arbitration. *Id.* at *2. In *Becker*, the Ninth Circuit held that a forum selection clause in an ERISA lawsuit was enforceable. Specifically, the Ninth Circuit held that "as this court's decision in *Dorman v. Charles Schwab Corp.* [ ] makes clear, a federal court is not even required. Wells Fargo might have foreclosed access to any federal court through an arbitration clause." *Id.*

[17] Though they have tried concealing the Plan's arbitration provision (*see e.g.,* Dkt. No. 285, fn. 7), the significance of Section 9.11 cannot be lost on the *Ferguson* Plaintiffs. The Charles Schwab Corporation, which won in *Dorman* by successfully arguing that *Munro* should not apply since <u>the Plan</u> agreed to arbitrate, was represented by the law firm Shepherd Finkelman Miller & Shah LLP. The same firm represents the *Ferguson* Plaintiffs here.

8

### C.    Any Plan Representative and DST *Must* Comply with the Plan's Provision Allowing for Individual Arbitration

The Plan document is central to ERISA's statutory scheme. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83–84 (1995). Among other things, plan fiduciaries are *required* to follow the plan document when administering the plan. 29 U.S.C. § 1102(a)(1); *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013) ("[O]nce a plan is established, the administrator's duty is to see that the plan is 'maintained pursuant to [that] written instrument.'"); *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 150 (2001) (noting "ERISA's requirements that plans be administered . . . in accordance with plan documents"). Moreover, the Plan is a "bilateral contract (an agreement where promises of future performance are exchanged)." *Conley v. Pitney Bowes*, 34 F.3d 714, 717 (8th Cir. 1994). Accordingly, since the Plan document here *mandates* that all Plan-related claims must be arbitrated and that no person is permitted to bring a claim on behalf of those bound by arbitration (unless by agreement), the Plan's administrators and representatives, including those who purport to represent the interests of the Plan, are *required* to comply.[18]

## II.    *Cooper* is Irrelevant Since the Parties *Agree* to Resolve their Dispute in Arbitration

While the foregoing amply demonstrates that *Cooper* is of no consequence here, the dissimilarities between *Cooper* and *Ferguson* continue to abound. In *Cooper*, the parties *disagreed* about whether Cooper's agreement with DST reached claims relating to the management of the profit-sharing fund.[19] At bottom, the holding in *Cooper* is narrow and inapposite to the full factual record: it concluded that "in the context of an employment arbitration agreement, a claim will 'relate

---

[18] *See* DST's Reply, Ex. G to the Schermerhorn Dec. at ¶ 13.

[19] RCG insisted that Cooper was *required* to arbitrate his Plan-related claims while Mr. Cooper insisted that he was not. The Court was thus called upon to resolve whether it *must compel* arbitration. *See Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000) ("the court must compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (internal quotation marks and citation omitted)). Put another way, the Court had to decide whether the Agreement (limited, by the record which did not disclose the Plan's adoption of the Agreement) covered the dispute between Mr. Cooper and RCG.

to' *employment* only if the merits of that claim involve facts particular to an individual plaintiff's own *employment*." *Cooper*, 990 F.3d at 184 (emphases added). Since Cooper's claims against RCG did not disclose facts particular to his own employment, he was not *required* to arbitrate.[20]

In this case, however, there is no disputing that the parties in arbitration have *agreed* to arbitrate. Indeed, the parties have *agreed* that "[a]ll claims, counterclaims, and defenses asserted by the Parties are within the jurisdiction of the Panel and arbitrable, and that there are no preconditions that must be satisfied before proceeding with the Arbitration." *See DuCharme v. DST Systems, Inc., et al.*, AAA Case No. 01-18-0003-0453, Case Management and Scheduling Order, Order No. 2 (March 3, 2020), Exhibit L to the Schermerhorn Dec. at ⁋ 24. Additionally, each arbitration is initiated by the filing of a written "Joint Submission for Arbitration," signed on behalf of both the individual claimant and DST. *See e.g.*, exemplar of the Joint Submission For Arbitration, Exhibit K to the Schermerhorn Dec. at ⁋ 23. By jointly submitting their disputes to AAA arbitration, the parties have created an independent, post-dispute arbitration agreement, enforceable under the FAA.[21] Even after the submission of a claim to arbitration, in virtually every case, the parties have stipulated and agreed on the record to proceed in arbitration before the appointed arbitrator.

---

[20] Again, the Court had not been provided with the language from the Plan, itself, and was thus left with no option but to interpret only the phrase "relating to *employment*." *Cooper,* 990 F.3d at 180 (emphasis added).

[21] *See Ganguly v. Charles Schwab & Co.*, 2004 WL 213016, at *2 (S.D.N.Y. Feb. 4, 2004), *aff'd*, 142 F. App'x 498 (2d Cir. 2005) ("even if plaintiff could overcome the hurdle of the pre-dispute Schwab Account Application, there is no genuine dispute that he freely and willingly executed the post-dispute NASD Uniform Submission Agreement."); *Dean Witter Reynolds, Inc. v. Fleury*, 138 F.3d 1339, 1342 (11th Cir. 1998) ("Under the Federal Arbitration Act, the Submission Agreement, being an 'agreement in writing to submit to arbitration an existing controversy,' is 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'") (quoting 9 U.S.C. § 2); *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1323 (5th Cir. 1994) ("It is well-settled that the arbitrator's jurisdiction is defined by both the contract containing the arbitration clause and the submission agreement. … Thus, the parties may agree to arbitration of disputes that they were not contractually compelled to submit to arbitration."); *Fisher v. Wheat First Sec., Inc.*, 62 F. App'x 472, 475 (4th Cir. 2003) ("The Uniform Submission Agreement completed and signed by Fisher is a valid and binding contract that has the force of modifying earlier agreements."); *Benacquisto v. Am. Exp. Fin. Corp.*, No. CIV. 00-1980 DSD, 2014 WL 3418692, at *2 (D. Minn. July 14, 2014) ("a uniform submission agreement to arbitrate is a valid and binding contract that effectively modifies earlier agreements"); *First Union Sec., Inc. v. Lorelli*, 168 N.C. App. 398, 401 (2005) ("the scope of the arbitrators' jurisdiction is defined by both the intent of the parties as expressed in … the submission agreement.").

Finally, on June 18, 2018, DST sent a "Notice Regarding Right to Assert Claim" to all current and former Plan participants advising them, "[p]ursuant to the terms of the Arbitration Program," that "if you desire to do so, you may initiate an *individual arbitration* proceeding under the Arbitration Program…in accordance with the procedures set forth in the Arbitration Program." (Dkt. No. 172-12.) The Notice specifically referred to claims alleging that DST and RCG "breached their duties to participants of the Plan under the Employee Retirement Income Security Act of 1974, as amended ("ERISA")." (*Id.*)

Thus, even if they were not *required* to submit to arbitration in the first place, the parties in arbitration have freely and willingly *agreed* to resolve their disputes in private arbitration, much like Mr. Cooper freely and willingly *agreed* to mediate his claims with DST in a private forum. *See Cooper*, 2021 WL 821390, at *3. And it makes no difference that the three *Ferguson* Plaintiffs purportedly opted out of arbitration. The question is not whether *they* must arbitrate; rather, the issue here is whether they can forcibly deprive *others* of the legally protectable *right* to arbitration.

### III. *Cooper* Affirms that Plaintiffs who Purport to Represent the Plan *as a Whole* Must Demonstrate their Suitability to Serve as Representatives of other Plan Stakeholders

Contrary to the *Ferguson* plaintiff's assertion, the Second Circuit did *not* hold, and indeed had no authority to hold, that ERISA fiduciary breach claims are not arbitrable. A prior panel already held such claims arbitrable in *Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116 (2d Cir. 1991), and a panel "is bound by a decision of a prior panel unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or this court *en banc*." *In re Sokolowski*, 205 F.3d 532, 534–35 (2d Cir. 2000). *Bird*'s rationale has been embraced, not overruled, by the

11

Supreme Court. *See*, *e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018).[22] Indeed, *every* circuit

to consider the question has held that claims arising under ERISA may be subject to arbitration.[23]

Instead, where the Court discusses the "adequacy-of-representation" requirement, the Court

is speaking of the requirement, established in *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006), that

a plaintiff who purports to represent the interests of the Plan *as a whole* must "demonstrate their

suitability to serve as representatives of the interests of other plan stakeholders." *Cooper*, 990 F.3d

at 184. Of course, when *Coan* was decided, the Second Circuit had concluded that in *Massachusetts*

*Mutual Life Insurance Co. v. Russell,* 473 U.S. 134 (1985), the Supreme Court barred claims for

individual relief and, instead, *required* that such claims be brought in a representative capacity on

behalf of the plan *as a whole*. *Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993). Thus, while

observing that Congress elected *not* to require a class action, the Court reasoned that "the

representative nature of the section 502(a)(2) right of action implies that plan participants must

employ procedures to protect effectively the interests they purport to represent." 457 F.3d at 259.

Since *Coan* and *Russell*, the Supreme Court made clear in *LaRue v. DeWolff, Boberg &*

*Assocs.*, 552 U.S. 248 (2008), that the "plan as a whole" language in *Russell* is "beside the point in

the defined contribution context." In *LaRue,* the Court determined that participants in a defined

contribution ERISA plan—such as the DST Profit Sharing Plan—can bring ERISA § 502(a)(2)

---

[22] In *Epic*, the Supreme Court upheld an arbitration provision that contained a waiver of class arbitration. 138 S. Ct. at 1627. In so ruling, the Court held that "even a statute's express provision for collective legal actions does not necessarily mean that it precludes 'individual attempts at conciliation' through arbitration." *Id.*

[23] *See, e.g.*, *Arnulf P. Sulit, Inc. v. Dean Witter Reynolds, Inc*., 847 F.2d 475, 478 (8th Cir. 1988) ("We find nothing…demonstrating Congress intended to prohibit arbitration of ERISA claims."); *Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000) ("Congress did not intend to prohibit arbitration of ERISA claims"); *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996) ("Congress did not intend to exempt statutory ERISA claims from the dictates of the Arbitration Act"); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 7 F.3d 1110, 1119 (3d Cir.1993) ("agreements to arbitrate statutory ERISA claims under the FAA may be enforceable"); *VanPamel v. TRW Vehicle Safety Sys., Inc.*, 723 F.3d 664, 669-70 (6th Cir. 2013) ("ERISA claims can be the subject of arbitration"); *Murphy v. Canadian Imperial Bank of Com.*, 709 F. Supp. 2d 242, 247 (S.D.N.Y. 2010) ("Congress did not intend ERISA claims to be non-arbitrable.").

claims *on their own behalf*. 552 U.S. 248 (2008).[24] This is true even though such actions are still "technically brought on behalf of the Plan." *Cusack-Acocella v. Dual Diagnosis Treatment Ctr., Inc.*, 2019 WL 7172597, at *12 (C.D. Cal. Oct. 7, 2019). In other words, while the claims of individual Plan participants may be styled as made "on behalf of the Plan," the Supreme Court has recognized that such claims are *inherently individualized* when brought in the context of a defined contribution plan like that at issue. *Dorman II*, 780 F. App'x at 514 ("Although § 502(a)(2) claims seek relief on behalf of a plan, the Supreme Court has recognized that such claims are inherently individualized when brought in the context of a defined contribution plan like that at issue."). Thus, the law now clearly permits "that a defined contribution plan participant can bring a § 502(a)(2) claim for the plan losses in her own *individual account*." *Id*. (Emphasis added.)[25]

DST and the *Ferguson* Plaintiffs each cite *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*, 710 F.3d 57 (2d Cir. 2013), for the contention that "[c]ontrary to Arbitration Claimants' argument, the Second Circuit has held—more than five years after the Supreme Court's decision in *LaRue* [ ]—that ERISA claims like those here 'may not be

---

[24] *See also In re Computer Scis. Corp. ERISA Litig.*, 2008 WL 7527874, at *2 (C.D. Cal. Sept. 2, 2008) (holding that, in accord with *LaRue*, participants in a defined contribution plan can bring ERISA § 502(a)(2) claims *on their own behalf*); *Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 666 F.3d 68, 71 fn. 1 (2d Cir. 2011) (observing that the Supreme Court "made clear" in *LaRue* that "ERISA permits an individual plan member to bring a breach of fiduciary duty claim against the administrator of a defined contribution plan"); *Smith v. Stockwell Const. Co.*, No. 10-CV-608S, 2011 WL 6208697, at *4 fn, 3 (W.D.N.Y. Dec. 14, 2011) (holding that while plaintiff participants were *previously* required to bring claims on behalf of the *entire* plan, that "requirement changed for plaintiffs seeking to recover under a defined contribution plan following the Court's decision in *LaRue*.").

[25] *See also John Blair Commc'ns, Inc. Profit Sharing Plan v. Telemundo Grp., Inc. Profit Sharing Plan*, 26 F.3d 360, 363 (2d Cir. 1994) (holding that in a defined contribution plan, "an individual plan member holds his or her own account and the eventual benefits received by the plan member are tied exclusively to the level of earnings on those funds during the life of the plan."). *Fisher v. JPMorgan Chase & Co.*, 303 F. App'x 979, 981 (2d Cir. 2008) (summary order) ("*LaRue* held that plaintiff participants in defined contribution pension plans may seek recovery for misconduct that impaired the value of plan assets in the participant's individual accounts") (internal quotations and alterations omitted.); *Smith v. Stockwell Const. Co*., No. 10-CV-608S, 2011 WL 6208697, at *4 fn, 3 (W.D.N.Y. Dec. 14, 2011) (holding that while plaintiff participants were previously required to bring claims on behalf of the entire plan, that "requirement changed for plaintiffs seeking to recover under a defined contribution plan following the Court's decision in LaRue.")

The Secretary of Labor agrees. When DST joined an effort to stay the very arbitrations that *it compelled*, the Secretary opposed the effort, pointing out that "*LaRue* clearly established the right of an individual participant to seek relief under 29 U.S.C. § 1109(a) to recover plan losses that resulted in lowering the value of the individual plaintiff's plan account." *Ruane, Cunniff & Goldfarb Inc., v. Payne, et al.*, 19-cv-11297 (S.D.N.Y.), ECF No. 40 at 11, 19.

made for individual relief, but instead are 'brought in a representative capacity on behalf of the plan.'" (*See e.g.,* Dkt. No. 277 at 8.) But in *L.I. Head Start*, the plan at issue was "an ERISA welfare *benefits* plan." 710 F.3d at 61. That is *precisely* why the Court in *L.I. Head Start* cited *Russell* and characterized the relief sought as "recoupment of funds the Trustees should have collected to keep the Plan financially solvent." *Id.* at 65.

*L.I. Head Start* is distinguished from the context of a defined *contribution* plan, where contributions are allocated to individual participant accounts. In the context of a defined *contribution* plan, the Second Circuit explicitly stated that "*LaRue* held that plaintiff participants *in defined contribution pension plans* may seek recovery for misconduct that impaired the value of plan assets in the participant's individual accounts, and held further that *Russell's* requirement of plan-wide recovery was beside the point in the defined contribution context." *Fisher*, 303 F. App'x at 981 (alterations omitted).

It was for this same reason that in *Ducharme v. DST Sys., Inc.*, No. 4:17-CV-00022-BCW, 2017 WL 7795123 (W.D. Mo. June 23, 2017), the U.S. District Court ordered that "the Arbitration Agreement at issue is valid and Ducharme's claims for breach of fiduciary duty fall within the Arbitration Agreement's scope." *Id.* at *1. More recently, the U.S. District Court, "having considered the … applicable legal authority," *reaffirmed* that the Arbitration Agreement "was declared valid and enforceable by this Court."[26]

Had the Second Circuit been made aware of the Plan's adoption of the Arbitration Agreement, it too would have found the Arbitration Agreement valid and enforceable. *See Cooper*,

---

[26] *See* Order Confirming Arbitration Award, Ex. M to Schermerhorn Dec. at ⁋ 32. Of course, as for the Arbitration Claimants and DST, the Orders from the U.S. District Court in Missouri are *binding*. Additionally, "[a]s a matter of comity, courts of coordinate jurisdiction should respect each other's decrees[.]" *St. Louis Amusement Co. v. Paramount Pictures*, 61 F. Supp. 854, 857 (E.D. Mo. 1945), *aff'd sub nom. St. Louis Amusement Co. v. Paramount Film Distrib. Corp.*, 168 F.2d 988 (8th Cir. 1948).

14

990 F.3d at 175-76, 185 (stating that "the *record* provides an inadequate basis for finding that the parties intended the Agreement to reach profit-sharing fund related claims under ERISA" and that it would *not* necessarily adopt a "countertextual reading of an arbitration agreement that explicitly applied to a given circumstance" (emphasis added)).[27]

Instead, hampered by an inadequate record, the Second Circuit speculated that claimants in their individual arbitration would either violate the Agreement's prohibition on bringing claims in a representative capacity or fail to suitably serve as representatives of the absent Plan participants by the mere fact of bringing claims for individualized relief. *Cooper*, 990 F.3d at 184. "[C]ourts in this Circuit," the opinion suggests, would therefore "decline to enforce any award she secures in arbitration for running afoul of *Coan*." *Id.*

Of course, the Court's concern is only applicable to those claimants who, like Mr. Cooper and the *Ferguson* Plaintiffs, purport to represent the Plan *as a whole*.[28] As for the Arbitration Claimants, who seek *individual* relief on behalf of the Plan, their awards do *not* run afoul of *Coan*. The Arbitration Claimants are *not* litigating the rights of others, but instead, are litigating their *own*, *individual* rights and entitlements, one at a time, and without adverse effects upon the rights of others. And, again, as stated above, arbitration awards were recently *confirmed* by the U.S. District Court for District of Missouri.[29] After finding that "it has jurisdiction over th[e] matter, personal jurisdiction over Defendant, and that the United States District Court for the District of Missouri is a proper venue for the confirmation of the arbitration awards," the Court "ORDERED AND ADJUDGED that…the arbitration awards…are CONFIRMED in their entirety."[30]

---

[27] *See also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983) ("as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability").

[28] In *Coan,* too, the plaintiff sought plan-wide "make whole monetary relief." *Coan*, 457 F.3d at 254.

[29] *See* Order Confirming Arbitration Award, Ex. M to Schermerhorn Dec. at ⁋ 32.

[30] *See* Judgment, Ex. N to Schermerhorn Dec. at ⁋ 32.

15

Still, while claims need no longer be brought in a representative capacity on behalf of the plan *as a whole*,[31] it remains necessary in this Circuit that a plaintiff who purports to represent the interests of the Plan *as a whole* must "demonstrate their suitability to serve as representatives of the interests of other plan stakeholders." *Cooper*, 990 F.3d at 184. Indeed, "the Due Process Clause *of course* requires that the named plaintiff at all times adequately represent the interests *of the absent class members*." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)) (emphases added). "[C]lass representative must have an interest in vigorously pursuing the claims of the class, and must have *no interests* antagonistic to the interests of other class members." *Id.* (quotation omitted) (emphasis added). Under the rubric of Rule 23, which applies here, "courts consider whether the class representative[s] ha[ve] adequate incentive to pursue the class's claim, and whether some difference between the class representative and some class members might undermine that incentive." *Id*

As demonstrated throughout this memorandum and elsewhere, the three *Ferguson* Plaintiffs have utterly *failed* to demonstrate their suitability to serve as representatives of the Plan.

## IV.   The *Ferguson* Plaintiffs do Not Represent the Interest of Other Plan Stakeholders

There are open and obvious material and significant differences between the *Ferguson* Plaintiffs and the class members that undermine the plaintiffs' ability to vigorously pursue the

---

[31] In *Cooper*, without distinguishing between a defined benefit plan and a defined contribution plan, the Court worried that a mandatory arbitration and class waiver agreement *might* "make it impossible to bring an ERISA fiduciary action that satisfies both the Agreement and the *Coan* representative adequacy requirement." 990 F.3d at 184. Indeed, in a defined benefit plan, such as the one at issue in *Russell*, that proposition makes sense because the plan's assets are held in a common and undifferentiated pool and no participant has an interest in any specific asset within the plan. Since such a claim *must* proceed in a representative capacity on behalf of the plan *as a whole*, a class action waiver would effectively eliminate the cause of action. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000) ("even claims arising under a statute designed to further important social policies may be arbitrated … so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum[.]" (internal quotation marks and alterations omitted)).

16

claims of the class and to represent the interests of other Plan stakeholders. For example, Plan participants have the *right* to seek redress for their individual Plan account losses through *arbitration*. Indeed, courts have consistently and repeatedly recognized that the right of arbitration is a "significant protectable interest."[32] In fact, Beth Sweetman, the former Chairwoman of the DST Advisory Committee, testified that the Plan adopted the Arbitration Agreement and class action waiver because individual arbitration "was in the best interest of the plan participants." (Dkt. No. 203-2 at 115-117.)[33] Meanwhile, the Secretary of Labor has asserted that efforts to enjoin the arbitrations "fly in the face of the public policy forged in ERISA" and "would do a grave disservice to the public interest that is memorialized in ERISA itself."[34] "Attempts to enjoin the arbitrations," the Secretary explained, "is also contrary to the clear public policy enshrined in the [FAA] that favors arbitration."[35]

Second, and no less important, is the right of every individual to have his or her own day in court. In *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), the Supreme Court cautioned that "[t]he inherent tension between representative suits and the day-in-court ideal is only magnified if applied to damages claims gathered in a *mandatory* class." *Id.* at 846 (emphasis added). For this reason, the

---

[32] *Tech. & Intellectual Prop. Strategies Grp. PC v. Insperity, Inc.*, No. 12-CV-03163-LHK, 2012 WL 6001098, at *7 (N.D. Cal. Nov. 29, 2012) (holding that the right to arbitration is a legally protected interest). *See also Elouarrak v. Firstsource Advantage, LLC*, No. 1:19-CV-03666, 2020 WL 291364, at *3 (N.D. Ill. Jan. 21, 2020) (holding that even an *arguable* right to arbitration is a "protectable interest"); *Brown v. Firstsource Advantage, LLC*, No. CV 17-5760, 2018 WL 4538412, at *3 (E.D. Pa. Sept. 21, 2018) (holding that enforcement of an arbitration provision is a "direct, protectable interest").

[33] The Supreme Court has repeatedly espoused "the *benefits* of private dispute resolution: *lower costs, greater efficiency and speed*[.]'" *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010)) (emphasis added). A class action, on the other hand, "makes the process *slower, more costly, and more likely to generate procedural morass* than final judgment." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011) (emphasis added). This is true here. The arbitrations are proceeding rapidly toward resolution, with the parties having *already* conducted extensive discovery, having *already* exchanged expert reports, rebuttals and replies, having *already* filed dispositive motions, and having *already* completed 259 arbitration hearings. DST has repeated to dozens of arbitrators that the parties in arbitration are likely to resolve all of the arbitration cases after the completion of a subset of early arbitrations. Thus, if left alone, the arbitrations are likely to be resolved quickly.

[34] *Ruane, Cunniff & Goldfarb, Inc. v. Payne*, No. 1:19-cv-11297-ALC, ECF No. 40 at 26 (S.D.N.Y. Jan. 24, 2020).

[35] *Id.*

17

Court reiterated that it had "raised the flag on this issue of due process more than decade ago in *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985)," when it said that "at a minimum an absent plaintiff **must be provided with an opportunity to remove himself from the class**." *Ortiz*, 527 U.S. at 848 (alterations and quotations omitted, emphasis added).[36] *See also In re Telectronics Pacing Sys., Inc.,* 221 F.3d 870, 881 (6th Cir.2000) (stating that the Supreme Court has stressed in interpreting Rule 23 that "in an action for money damages class members are entitled to personal notice and **an opportunity to opt out**." (Emphasis added.)); *Brown v. Ticor Title Ins. Co.,* 982 F.2d 386, 392 (9th Cir.1992) (applying *Shutts* to federal court actions).

Third, parties involved in litigation are "presumptively entitled to the counsel of his choice." *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006). Here, hundreds of Plan participants have engaged counsel of their choice; counsel with whom they have met and with whom they have already appeared at depositions, in hearings, and at countless meetings and town hall events. Counsel for the Arbitration Claimants have the distinct benefit of residing where most Plan participants live *and* of having tried the case against DST *more than 30 separate times* (and on behalf of more than 265 Arbitration Claimants). As one arbitrator stated: "The legal skill, dedication and hard work displayed by Claimant's counsel … is some of the best lawyering this Arbitrator has seen in over 40 years of practice in the Kansas City area." (ECF No. 240 at 3.)

Once again, class representatives are fiduciaries who must protect the class's interests with "diligence, wisdom and integrity." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949). Here, in contrast to their obligation of protecting the interests of the class, the *Ferguson* Plaintiffs seek to *extinguish* the constitutionally recognized property interests and contractual rights possessed by each of the Arbitration Claimants, hundreds of whom have already invoked their

---

[36] In *Shutts*, the Court was examining the particular procedural protections "attendant on binding out-of-state class members whose claims were 'wholly or predominately for money judgments.' " *Ortiz*, 527 U.S. at 848 fn. 24.

18

arbitration rights and entitlements and are well on their way to significant recoveries, with well over 100 of them having already received an award.

The *Ferguson* Plaintiffs also ignore the substantive legal rights *earned* by numerous Arbitration Claimants in the course of their individual arbitration proceedings. 114 Arbitration Claimants have ***already won*** awards in arbitration against DST. (Schermerhorn Decl. at 31.) 10 others have won summary disposition on the issue of DST's liability and are awaiting damage awards. (*Id.*) 100 others have already completed merits hearings and are awaiting awards. (*Id.*) More than 70 others have been given dates on which their hearings will be held following months of litigation, discovery and motion practice (and still more than 290 others have duly filed their claims in arbitration, thereby invoking their rights and entitlements). (*Id.*) At least 550 putative Class Members have significant and valuable rights, protected by the Federal Arbitration Act and a prior, final U.S. District Court Order. The *Ferguson* Plaintiffs seek to extinguish all of this simply because it will provide *the defendants*—who have *twice* compelled individual arbitration— "complete peace" at a significantly reduced price. (Dkt. No. 266-1 at 24.)[37]

The *Ferguson* Plaintiffs also ignore the significant advantages had by maintaining suit in the Eighth Circuit. In the Eighth Circuit, which law applies to the Arbitrations, there is no claim for contribution. *Travelers Cas. & Sur. Co. of Am. v. IADA Servs., Inc.*, 497 F.3d 862, 867 (8th Cir. 2007). Accordingly, there is no need to apportion fault between the RCG and DST and Arbitration Claimants are entitled, if they wish, to satisfy the *entire* damage amount out of the assets of *either* DST or RCG. *Donovan v. Robbins*, 752 F.2d 1170, 1178 (7th Cir. 1985).[38]

---

[37] It is not as if the Defendants are without available funds to satisfy the claims of all participants. When it was acquired by SS&C, DST's potential liability in these ERISA-related cases was known and DST was still valued at $5.4 billion, and SS&C's acquisition of the company and its liabilities has only added to the funds available. (*See* SS&C to Acquire DST Systems (Jan. 11, 2018), available at https://investor.ssctech.com/investor-relations/press-releases/press-release-details/2018/SSC-to-Acquire-DST-Systems/default.aspx.). RCG, meanwhile, "appears to earn more than $100 million in annual revenue." *DST Systems, Inc. v. Ruane, Cunniff & Goldfarb Inc., et al.*, No. 1:20-cv-9472, ECF No. 1 at 5.

[38] For this reason, it makes no sense to compare the Claimants' settlement with RCG to that which the *Ferguson*

Finally, the *Ferguson* Plaintiffs ignore the plain and unambiguous terms of *the Plan*, which they purport to represent. The Plan expressly states that "any and all claims arising out of or related to the Plan…***are subject to mandatory arbitration and class action waiver***." It necessarily follows that if Plan fiduciaries "are *required* to discharge their duties 'in accordance with the documents and instruments governing the plan,'"[39] Plan representatives must do so too, *especially* when Plan participants *desire* adherence to the terms of the Plan. Indeed, where an arbitration provision is included in an ERISA plan's governing document, the FAA's directive to enforce arbitration agreements and ERISA's directive to enforce plan documents as written are both fulfilled by *enforcing* the arbitration provision.

RCG, in its earlier, principled opposition to class certification, accurately described the *Ferguson* Plaintiffs as "seeking to sidestep the Arbitration Agreement." (Dkt. No. 140 at 2.) As for the prerequisites to class certification, RCG asserted that:

> Plaintiffs cannot meet the requirements of Rule 23 because the DST Systems, Inc. 401(k) Profit Sharing Plan (the "Plan") contains an arbitration agreement binding 95% of the proposed class (the "Arbitration Agreement"). In the Arbitration Agreement, 95% of Plaintiffs' proposed class waived not only their right to "assert claims on behalf of multiple [participants] or as a class action or collective action" *but also* their right to have claims asserted on their "behalf by another person as a class representative or otherwise."

(*Id.* at 1.)

At this juncture, of course, it is accurate to state that the Arbitration Claimants have *exercised* their constitutionally recognized and statutorily protected contractual right to proceed with individual arbitrations. Thus, as RCG stated:

> Plaintiffs have not met, *and cannot meet*, their burden under Rule 23 of demonstrating by a preponderance of the evidence that they have met each of the

---

Plaintiffs have made with DST. The Arbitration Claimants remain free to collect *all* remaining damages from DST, while the settlements proposed by the *Ferguson* Plaintiffs would bar *any* additional recovery, even that which may be sought by the DOL.

[39] *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) (quoting 29 U.S.C § 1104(a)(1)(D)) (emphasis added).

rule's requirements. Specifically, because Plaintiffs, who are not bound by the Arbitration Agreement, seek to represent a class comprised primarily of individuals subject to [and who enjoy the *benefits* of] the Arbitration Agreement, the case law is clear that Plaintiffs fail to satisfy the typicality, adequacy of representation, and commonality requirements of Rule 23(a). Further, permitting Plaintiffs to represent a class made up primarily of participants bound by the Arbitration Agreement would fly in the face of the purpose and language of the Federal Arbitration Act, which the Supreme Court has directed is to be "rigorously enforce[d]." *Perry v. Thomas*, 482 U.S. 483, 490 (1987) (alteration in original).

(*Id.* at 2 (emphasis added).)

Indeed, in all the cases refusing to certify a class consisting of putative members bound by arbitration,[40] the courts have uniformly observed that class representatives who did not agree to arbitrate *cannot* represent class members who did because the would-be representatives lack the will and ability to enforce the arbitration agreements. *See e.g., Conde*, 223 F. Supp. 3d at 960 (representatives atypical because "Plaintiffs . . . have no interest in the enforceability of the arbitration agreement itself"). That is precisely the problem here. The *Ferguson* Plaintiffs have *no interest* in enforcing the Arbitration Agreement. On the contrary, they seek to *eliminate* the lawful and valuable contractual rights bargained for by the Arbitration Claimants and adopted by the Plan so that *the Defendants*, each of whom has *compelled* individual arbitration, can achieve "complete peace." It is a complete farce.

There is no other reason to *insist* upon a mandatory class. In *Coan*, the Court made a point to specifically mention that Congress *declined* to require a mandatory class and quoted with

---

[40] *See, e.g., Jensen v. Cablevision Systems Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019); *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018); *Avilez v. Pinkerton Gov't Servs.*, 596 F. App'x 579, 579 (9th Cir. 2015); *Quinlan Macy's Corporate Services, Inc.*, No. CV-12-00737-DDP, 2013 WL 11091572, *3 (C. D. Cal. Aug. 22, 2013); *Renton v. Kaiser Found. Health Plan, Inc.*, No. C00-5370RJB, 2001 WL 1218773, at *7 (W.D. Wash. Sept. 24, 2001); *Conde v. Open Door Marketing, LLC*, 223 F. Supp. 3d 949, 961 (N.D. Cal. 2017); *Tan v. Grubhub, Inc.*, No. 15-cv-05128-JSC, 2016 WL 4721439, at *6 (N.D. Cal. July 19, 2016); *Zieger v. Advance America*, C.A. No. 13-1614-GMS, 2014 WL 7388365, at *7 (D. Del. Dec. 29, 2014); *Macedonia Distrib., Inc. v. S-L Distribution Co., LLC*, No. SACV171692JVSKESX, 2020 WL 610702, at *6 (C.D. Cal. Feb. 7, 2020); *Tschudy v. J.C. Penney Corp., Inc.*, 2015 WL 8484530, at *3 (S.D. Cal. Dec. 9, 2015); *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-CV-04456-PJH, 2018 WL 6727825, at *7 (N.D. Cal. Dec. 21, 2018).

21

approval the case of *Hebbard v. Colgrove*, in which the Court stated: "It is to be assumed that should this matter proceed as a class action, the members of the class will receive notice and be given an opportunity to participate ***or withdraw from the action as they desire***." 28 Cal. App. 3d 1017, 1027 (1972) (emphasis added). Most certainly, the Defendants are not *entitled* to a mandatory class. Having to defend against hundreds of individual arbitrations is the inevitable—and *intended*—consequence of the Defendants' decision to enforce the Arbitration Agreement in the first place.[41]

Thus, if the *Ferguson* Plaintiffs genuinely sought to protect the interests of those they purported to represent, they would pursue an *opt-out class* or some other procedural safeguards meant to *preserve and protect* the rights of the Plan participants and the DOL.[42] An opt-out class under Rule 23(b)(3), for example, if properly constructed and administered, could provide *exactly* the kinds of procedural protections envisioned by the Court in *Coan* and referenced by the Court in *Cooper*: hypothetically, it would include notifying all Plan participants of their alternative right to remain members of a class action pending in this District (which, in turn, could potentially resolve due process and jurisdictional concerns) or to pursue individual arbitration in accord with the rights afforded them ***under the Plan*** and otherwise.

---

[41] Here, counsel is obliged to remind the Court, once again, of the brazen flip-flop rejected by the Court in *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062 (N.D. Cal. 2020). In *Abernathy*, DoorDash's agreement with its couriers imposed mandatory individual arbitration. When a group of 5,879 couriers complied with those agreements by demanding arbitration, DoorDash balked at the prospect of having to arbitrate with thousands of workers and moved to stay the arbitration proceedings pending final approval of a class action settlement. *Id.* at 1064-65. Judge William Alsup refused to countenance the bait and switch, explaining:

> For decades, the employer-side bar and their employer clients have forced arbitration clauses upon workers, thus taking away their right to go to court, and forced class-action waivers upon them too, thus taking away their ability to join collectively to vindicate common rights. The employer-side bar has succeeded in the United States Supreme Court to sustain such provisions. The irony, in this case, is that the workers wish to enforce the very provisions forced on them by seeking, even if by the thousands, individual arbitrations, the remnant of procedural rights left to them. The employer here, DoorDash, faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. No doubt, DoorDash never expected that so many would actually seek arbitration. Instead, in irony upon irony, DoorDash now wishes to resort to a class-wide lawsuit, the very device it denied to the workers, to avoid its duty to arbitrate. This hypocrisy will not be blessed, at least by this order.

[42] Since Rule 23(b)(3) includes the right to opt out (among other procedural due process protections that, in *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court ruled should accompany individualized monetary claims, 131 S. Ct. 2541, 2545), it is the view of the Arbitration Claimants that a class action *may* be proper under Rule 23(b)(3).

22

Certification of an opt-out class would also avoid the current risk of violating the "law of the case" doctrine, as it surely applies to those arbitrations pending in Missouri, and the judicial unseemliness of two courts of equal authority both considering the exact same issue—i.e., whether parties to the Agreement may enforce their right to individual arbitration—and reaching contrary conclusions. In fact, comity *requires* that federal courts exercise care to avoid interfering with proceedings in other federal courts. *See e.g., Hoffman v. Blaski*, 363 U.S. 335, 348–49 (1960) (Frankfurter, J., dissenting); *Hayman Cash Reg. Co. v. Sarokin*, 669 F.2d 162, 169 (3d Cir. 1982).[43]

## V.    The Court May Not Enjoin the Arbitration Claimants

There is also one or more insurmountable problems arising out of the limitations on the Court's authority to permanently enjoin and/or extinguish the arbitrations. The *Ferguson* Plaintiffs cite *Stott v. Cap. Fin. Servs., Inc.*, 277 F.R.D. 316 (N.D. Tex. 2011), as evidence that "[c]ourts routinely exercise their authority to enjoin pending arbitrations in the interest of a 23(b)(1) class." (Dkt. No. 285 at 8-9). But in *Stott*, the court specifically found that an injunction was justified because it was a "limited fund" case. *Id.* at 341 ("The Court would be reluctant to expand its holding to situations beyond the extraordinary circumstances of a 'limited fund'"). In fact, the Court went further to observe that the All Writs Act would *not* permit an injunction if the Court's concern were limited to the efficient management and preservation of a class action settlement. *Id.* at 340.[44]

Indeed, there "are *very few* reported cases in which a federal court has enjoined arbitration." *In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*, 71 F.3d 298, 302 (8th Cir. 1995) (emphasis added). This is because "the FAA *does not authorize* a district court to enjoin arbitration;

---

[43] "The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity with perhaps no higher sanction than the utility which comes from concord[.]" *Covell v. Heyman*, 111 U.S. 176, 182 (1884).
[44] The *Ferguson* Plaintiffs also cite *In re Joint E. & S. Dist. Asbestos Litig.,* 134 F.R.D. 32 (E.D.N.Y. 1990). But that case says *nothing* of arbitrations or the Federal Arbitration Act.

23

instead, § 16(a)(2) makes immediately appealable 'an interlocutory order granting ... an injunction against an arbitration that is subject to this title.' " *Id.* (Emphasis added.)[45] *See also* P*rima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("arbitration procedure, when selected by the parties to a contract, [must] be speedy and not subject to delay and obstruction in the courts").[46]

As was stated by the Eighth Circuit *Piper Funds*:

[the] contractual and statutory right to arbitrate may not be sacrificed on the altar of efficient class action management. As the Supreme Court said in *Dean Witter [Reynolds Inc. v. Byrd*, 470 U.S. 213, 220 (1985)], "[the FAA] was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered, and we must not ... allow the fortuitous impact of the Act on efficient dispute resolution to overshadow the underlying motivation."

71 F.3d at 303.

Likewise, the contractual and statutory right to arbitrate may not be sacrificed on the altar of a large—albeit grossly inadequate—settlement.

we do not accept the class action parties' conclusory assertion that immediate arbitration … will frustrate their class action settlement. For example, in *In re First Commodity Corp. Customer Accounts Litig.,* 119 F.R.D. 301, 305–06 (D.Mass.1987), cited … as the only reported decision acknowledging the power to stay arbitration by objecting class members pending approval of a settlement, the court declined to stay arbitration, and the defendants promptly waived that condition of the settlement. Moreover, even when the settling parties contemplate that class members with a substantial dollar volume of claims may opt out in favor of arbitration, their settlement agreement can conditionally take that into account; indeed, it may even assist the settlement process to have arbitration opt outs identified before the final hearing on settlement approval. Finally, the class action court should not be concerned if the settlement fund is ultimately reduced because many claimants elect to arbitrate; plaintiffs' class attorneys should not share in amounts paid to settle the claims of class members who choose arbitration.

---

[45] "A nonparty normally has standing to appeal when it is adversely affected by an injunction." *Piper Funds*, 71 F.3d at 301.

[46] As was stated by the Second Circuit, "courts once possessed a 'hostility' towards arbitration agreements[.] *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006). "Congress passed the FAA to tame that antipathy. Now, it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we 'have often and emphatically applied.'" *Id.*

24

*Id.*[47]

Additionally, it makes no difference that there exists a potential of inconsistent results. As the Supreme Court noted in *Moses H. Cone:*

> [F]ederal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.

460 U.S. at 20 (emphasis in original) (footnotes omitted).

In *Piper Funds*, for example, the Court specifically rejected the view that arbitration was improper simply because it may create duplicative litigation and a potential for inconsistency. 71 F.3d at 303. *See also In re Prudential Ins. Co. of Am. Sales Prac. Litig. All Agent Actions*, 133 F.3d 225, 234 (3d Cir. 1998) ("While we share the district court's apprehension toward inconsistent results and inefficiencies caused by arbitration, we cannot frustrate the enforcement of the arbitration clause pursuant to the Federal Arbitration Act on the basis of this concern.").

## VI.   Alternatively, the Court should Allow Discovery by the Arbitration Claimants

Although the foregoing is more than enough to deny the motions in their entirety, it would not be appropriate to grant certification without more information about the *Ferguson* Plaintiffs' ability to represent the proposed class, including their knowledge of the issues, their independence from class counsel, the details and amounts of their alleged losses, and the circumstances of their settlement negotiations with DST. "Discovery is often appropriate on class certification issues." *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 233–34 (2d Cir. 2006). Indeed, [d]iscovery on the prerequisites of Rule 23 is plainly appropriate, and in some cases necessary." *Id*.

---

[47] The Eighth Circuit further held that the district court had erred in denying the arbitration claimant's request to opt out. The Court noted that the usual practice of not allowing class members to opt out until after notice to the class "is not appropriate in this case ... when a class member *with an immediate right to arbitrate its claim* seeks to opt out." *Piper Funds*, 71 F.3d at 304 (Emphasis added.)

Here, since the *Ferguson* Plaintiffs seek approval of a settlement as well as a mandatory class absent *any* deposition or expert discovery (Dkt. No. 125 at pp. 4-5, 7), the Arbitration Claimants *must* be afforded an adequate opportunity to test by discovery the strengths and weaknesses of the Plaintiffs and their proposed class counsel. *Saylor v. Bastedo*, 78 F.R.D. 150, 153 (S.D.N.Y. 1978).

## CONCLUSION

The motion for leave to amend and the motion for class certification should be denied in their entirety. Alternatively, the motions should be held in abeyance pending discovery into the proposed class representatives' compliance with Rule 23.

Dated: May 3, 2021

Respectfully submitted,

THE KLAMANN LAW FIRM

 /s/ Andrew Schermerhorn
Andrew Schermerhorn (admitted pro hac vice)
4435 Main Street, Suite 150
Kansas City, MO 64111
(816) 421-2626
ajs@klamannlaw.com

HUMPHREY, FARRINGTON & McCLAIN
Kenneth B. McClain (not admitted in S.D.N.Y.)
221 West Lexington, Suite 400,
P.O. Box 900
Independence, MO 64051
Telephone: (816) 836-5050
kbm@hfmlegal.com

KAPKE & WILLERTH
Ted Kapke (not admitted in S.D.N.Y.)
Mike Fleming (not admitted in S.D.N.Y.)
3304 N.E. Ralph Powell Road
Lee's Summit, MO 64064
(816) 461-3800

26

ted@kapkewillerth.com
mike@kapkewillerth.com


WHITE, GRAHAM, BUCKLEY & CARR
William Carr (not admitted in S.D.N.Y.)
Bryan T. White (not admitted in S.D.N.Y.)
19049 East Valley View Parkway
Independence, MO 64055
(816) 373-9080
wcarr@wagblaw.com
bwhite@wagblaw.com

*Attorneys for the Arbitration Claimants*

27