# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL L. FERGUSON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>RUANE, CUNNIFF & GOLDFARB INC., *et al.*<br><br>Defendants. | 17 Civ. 6685 (ALC) (BCM) |

**MEMORANDUM OF LAW ON BEHALF OF ARBITRATION CLAIMANTS IN OPPOSITION TO *FERGUSON* PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR RELATED RELIEF**

# TABLE OF CONTENTS

TABLE OF CONTENTS...........................................................................................................ii

TABLE OF AUTHORITIES ...............................................................................................iii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ......................................................................................................................... 4

I.     The Settlement Class, the Proposed Injunction, and the Separate Settlements Should be Denied Preliminary Approval ...........................................................................................6

     A.     Standard of Review.............................................................................................6

     B.     The Court Cannot Certify a Class Action Under Rule 23 .......................................8

           1.     The Settlement Class Fails Rule 23(a).......................................................8

           2.     The Settlement Class Fails Rule 23(b)(1)..................................................16

                  i.     Individual Suits Do Not Impose Incompatible Standards ............18

                  ii.     Individual Suits Do Not Prejudice Other Class Members .............19

                  iii.     The Court Cannot Obtain Jurisdiction Over Absent Class Members Through Certification of a Rule 23(b)(1) Class.............................20

     C.     The Court Cannot Grant Final Approval of the Proposed Settlement..................21

           1.     The Rule 23(e)(2) Factors Weigh Against Preliminary Approval.............21

                  i.     The Ferguson Plaintiffs Do Not Adequately Represent the Class.21

                  ii.     The Settlements are Not the Result of Good Faith, Arm's Length Negotiations ....................................................................................22

                  iii.     The Relief Afforded is Inadequate.................................................22

            2.     The Remaining *Grinell* Factors Weigh Against Preliminary Approval ....24

II.     The Court Cannot Grant the Requested Injunctive Relief .................................................24

III.     The Proposed Notice Fails to Apprise Interested Parties of the Most Relevant and Prejudicial Terms of the Settlements ................................................................................25

CONCLUSION....................................................................................................................... 26

## **TABLE OF AUTHORITIES**

**Cases**

*Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062 (N.D. Cal. 2020) ......................... 3, 4

*Abramovitz v. Ahern*, 96 F.R.D. 208 (D. Conn. 1982) .................................................. 19

*Avilez v. Pinkerton Gov't Servs.*, 596 F. App'x 579 (9th Cir. 2015) ............................. 10

*Brown v. Ticor Title Ins. Co.*, 982 F.2d 386 (9th Cir.1992) .......................................... 21

*Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-CV-04456-PJH, 2018 WL 6727825 (N.D. Cal. Dec. 21, 2018) .......................................................... 10

*Carlough v. Amchem Prod., Inc.*, 10 F.3d 189 (3d Cir. 1993) ...................................... 24

*Carr v. Int'l Game Tech.*, 2012 WL 909437, at *7 (D. Nev. Mar. 16, 2012) ......................... 17, 20

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949) ......................................... 9

*Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000) ........................................ 19

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .............................................................. 6

*Conde v. Open Door Marketing, LLC*, 223 F. Supp. 3d 949 (N.D. Cal. 2017) ..................... 10, 13

*Cusack-Acocella v. Dual Diagnosis Treatment Ctr., Inc.*, 2019 WL 7172597 (C.D. Cal. Oct. 7, 2019) ......................................................................................................... 17

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ............................................. 7

*Donovan v. Robbins*, 752 F.2d 1170 (7th Cir. 1985) ...................................................... 14

*Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. 2019) ............................... 17

*Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) ............................... 20

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) ......................................................... 18

*Fisher v. JPMorgan Chase & Co.*, 303 F. App'x 979 (2d Cir. 2008) ................................. 16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998) .............................................. 6

*Hyundai Mipo Dockyard Co. v. AEP/Borden Indus. (In re Rationis Enters. of Pan.)*, 261 F.3d 264 (2d Cir. 2001) .......................................................................................................... 24

*In re Bendectin Prod. Liab. Litig.*, 749 F.2d 300 (6th Cir. 1984) ................................... 19

*In re Computer Scis. Corp. ERISA Litig.*, 2008 WL 7527874 (C.D. Cal. Sept. 2, 2008) ........ 16, 17

*In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2017 WL 1273963 (S.D.N.Y. Mar. 31, 2017) ...................................................................................................................... 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016) ...................................................................................................................... 3, 8

*In re Real Estate Title & Settlement Servs. Antitrust Litig.*, 869 F.2d 760 (3d Cir.) ..................... 21

*Izzio v. Century Golf Partners Mgmt., L.P.*, 670 F. App'x 348, 350 (5th Cir. 2016) ..................... 7

*Jensen v. Cablevision Systems Corp.*, 372 F. Supp. 3d 95 (E.D.N.Y. 2019) ................................. 10

*John Blair Commc'ns, Inc. Profit Sharing Plan v. Telemundo Grp., Inc. Profit Sharing Plan*, 26 F.3d 360 (2d Cir. 1994) ............................................................................................ 17

*Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019) ......................................................... 15

*LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248 (2008) ........................................... 16

*Macedonia Distrib., Inc. v. S-L Distribution Co., LLC*, No. SACV171692JVSKESX, 2020 WL 610702 (C.D. Cal. Feb. 7, 2020) ...................................................................... 10

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) ............................................... 16

*Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072 (2d Cir.1995) ...................... 6

*Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 666 F.3d 68 (2d Cir. 2011) 16

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) .................................... 25

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013) ............................................... 11

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985) ........................................ 3, 20, 21

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618 (6th Cir. 2011) ............................................................................................................... 19

*Quinlan Macy's Corporate Services, Inc.*, No. CV-12-00737-DDP, 2013 WL 11091572 (C. D. Cal. Aug. 22, 2013) ........................................................................................... 10

*Renton v. Kaiser Found. Health Plan, Inc.*, No. C00-5370RJB, 2001 WL 1218773 (W.D. Wash. Sept. 24, 2001) .................................................................................................. 10

*Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277 (7th Cir.2002) ..................................... 7

*Smith v. Stockwell Const. Co.*, No. 10-CV-608S, 2011 WL 6208697 (W.D.N.Y. Dec. 14, 2011) 16

*Southland Corp. v. Keating*, 465 U.S. 1, 13 (1984) ........................................................ 10

*Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir.2003) .......................................................... 7

*Sullivan v. DB Invs., Inc.,* 667 F.3d 273 (3d Cir.2011) .................................................... 6

*Tan v. Grubhub, Inc.*, No. 15-cv-05128-JSC, 2016 WL 4721439 (N.D. Cal. July 19, 2016) ....... 10

*Travelers Cas. & Sur. Co. of Am. v. IADA Servs., Inc.*, 497 F.3d 862 (8th Cir. 2007) ................. 14

*Tschudy v. J.C. Penney Corp., Inc.*, No. 11CV1011 JM (KSC), 2015 WL 8484530 (S.D. Cal. Dec. 9, 2015) ....................................................................................................... 10

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989) .... 10

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................................... 6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ................................ 22, 25

*Zieger v. Advance America*, C.A. No. 13-1614-GMS, 2014 WL 7388365 (D. Del. Dec. 29, 2014) ................................................................................................................... 10

*Zimmerman v. Bell*, 800 F.2d 386 (4th Cir. 1986) ......................................................... 19

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir.) .................................... 19

iv

**Other Authorities**

4 William B. Rubenstein et al., *Newberg on Class Actions* § 13:33 (4th ed. 2011) ...................... 21

Arthur R. Miller et al., *Jurisdiction and Choice of Law in Multistate Class Actions After* Phillips Petroleum Co. v. Shutts, 96 Yale L.J. 1, 52 (1986).................................................................. 21

Note, Stephen T. Cottreau, *The Due Process Right to Opt Out of Class Actions,* 73 N.Y.U. L.Rev. 480, 490 (1998) ............................................................................................................... 21

**Rules**

Fed. R. Civ. P. 23(e)(1) ............................................................................................................... 25

The Arbitration Claimants—consisting of 490 Plan participants who have exercised their contractual, statutory, property, and constitutional rights to pursue *individual* damages claims against DST Systems, Inc., outside this District—submit this opposition to the Plaintiffs' Motions for Preliminary Approval of Class Action Settlement (Dkt. Nos. 265, 266) and Proposed Preliminary Approval Orders (Dkt. Nos. 261-4, 263-4).[1] For the reasons set forth below, as well as for those set forth in the memoranda previously submitted by and/or on behalf of the Arbitration Claimants (Dkt. Nos. 175, 182, 258), and for the reason set forth in the Secretary of Labor's Letter in Opposition to the Proposed Class Action Settlements (Dkt. No. 269), all of which are incorporated as if fully set forth herein, the Plaintiffs' Motions should be *denied*.

## PRELIMINARY STATEMENT

In a transparent attempt to stamp out the Arbitration Claimants' ongoing success in achieving sustained and nearly unbroken maximal recovery against DST Systems, Inc. ("DST"), the *Ferguson* Plaintiffs, who erroneously profess "the assistance and cooperation of the United States Department of Labor" (Dkt. No. 79 at 3), pray for an order that extinguishes and sacrifices the Arbitration Claimants' contractual and constitutional rights—*and recoveries*—at altar of "*the Defendants'* legitimate interest in achieving complete peace through the settlement process." (Dkt. No. 266-1, emphasis added.) Rather than endorse and support the Arbitration Claimants' successful and *valuable* efforts at securing the topmost recovery from DST, the *Ferguson* Plaintiffs plead for an order that abolishes and annuls the Arbitration Claimants' accomplishments in exchange for a settlement that the Secretary of Labor decries as illegal and insufficient. (Dkt. No. 269 at 2.)

---

[1] This Memorandum, which is submitted solely for purposes of objecting to the proposed class action settlements and proposed preliminary approval orders, includes an objection to the Court's jurisdiction. Counsels' appearance is limited and special to object to the Court's jurisdiction over the Arbitration Claimants and to respond to the motions as ordered by the Court. The Arbitration Claimants do not consent to jurisdiction or waive any objections to the Court's personal or subject matter jurisdiction over them, and by this response they specifically object to any such jurisdiction.

1

Indeed, the Arbitration Claimants (who represent 32.5% of the Plan assets) are presently on course to recover between approximately $41,000,000 and $84,000,000 (*plus* separate attorneys' fees and costs) *in their claims, alone.* (Schermerhorn Decl. at ¶ 18.[2]) If extrapolated to the entire Plan, the Arbitration Claimants are on course to prove damages totaling between $127,000,000 and $261,000,000 (*plus* separate attorneys' fees and costs). (*Id*.) The Secretary, meanwhile, promises to recover any losses remaining after the completion of the arbitration proceedings, thus ensuring that all Plan participants are afforded the greatest likelihood of recovering *all* their lost retirement savings. *See Ruane, Cunniff & Goldfarb, Inc. v. Payne,* No. 1:19-cv-11297-ALC, ECF No. 40 at 17 (S.D.N.Y. Jan. 24, 2020) ("*Payne*").

The *Ferguson* Plaintiffs, however, in degradation of the interests of the Plan, are requesting that the Court forcibly require that Plan participants share in settlements totaling only $79,000,000, which will be significantly *reduced* by attorneys' fees and costs. In exchange for this inadequate amount (which the Arbitration Claimants surmise aligns with the defendants' corporate budgets rather than the damages they caused), the *Ferguson* Plaintiffs ask the Court not only to cut off and extinguish the Arbitration Claimants' rights, enhanced by a remarkable rate of success, but also to eliminate and dispose of the Secretary's role in protecting and restoring Plan assets.

Not surprisingly, the Secretary "***strongly object[s]***" to the *Ferguson* Plaintiffs' subversive and insufficient settlements. (Dkt. No. 269, emphasis added.) The Secretary describes the proposed injunctive relief, which would bar even <u>non</u>-class members from pursuing a claim for damages, as an "attempt to undermine ERISA" and asserts that the defendants' fiduciary breaches "caus[ed] major losses to the Plan that *far exceed* the proposed settlement amounts." (*Id.* Emphases added.)[3]

---

[2] The Declaration of Andrew Schermerhorn is filed contemporaneously herewith.
[3] The breadth of the requested injunction/bar order is so expansive, it would enjoin and bar even the "Participant[s] who ha[ve] ***been excluded*** from the Settlement Class, from bringing or prosecuting in any forum any Claim that arises from, relates to, or is connected with" the conduct alleged in the Complaint or alleged in a complaint in any Related

2

Previously, the Court reasoned that the involvement of the Secretary of Labor is "proof that the Plan participants' interests are being adequately represented." (Dkt. No. 94 at 9.) Now, the Secretary's strong objection—and rare intervention—is proof that the *Ferguson* Plaintiffs are ***not*** representing the interests of the Plan or the Plan participants. In fact, as for the DST Defendants, the proposed settlement is an obvious attempt to whipsaw the federal Courts, *and hundreds of Plan participants.* After having secured an order *compelling* individual arbitrations,[4] DST now asserts that ERISA § 502(a)(2) claims should be resolved through a single, *mandatory* class action. (Dkt. No. 185 at 6.)[5] This rather convenient reversal represents the height of procedural gamesmanship and forum shopping and reminds counsel of the brazen flip-flop rejected by the Court in *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062 (N.D. Cal. 2020).[6]

---

Proceeding "and any subsequent pleading or legal memorandum filed in any Related Proceeding," or "the Plan (including, without limitation, the selection, retention and monitoring PSP investments, the performance, fees, and any other characteristic of the PSP)." (*See* Dkt. No. 261-4 at ¶ 18, emphasis added.) In other words, the *Ferguson* Plaintiffs are requesting that the Court extinguish a constitutionally recognized property interest without *any* procedural or substantive due process protections for those excluded from the class. That, of course, is not permitted. *See e.g., Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985) (holding that a claim for money damages is "a constitutionally recognized property interest"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 241 (2d Cir. 2016) (Leval, J., concurring) (holding that Courts *must* provide minimal procedural due process protection).

[4] *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17CV6685ALCBCM, 2020 WL 4586800, at *1 (S.D.N.Y. Aug. 10, 2020) ("In 2017, RCG and the DST Defendants successfully moved to stay or dismiss two putative class actions – one in this district and one in Missouri – on the ground that the named plaintiffs were bound by an arbitration agreement contained in DST's employee handbook.).

[5] What is worse, while asserting that Plan participants "have no individual interests in their claims at all" (Dkt. No. 185 at 6), DST has failed to disclose to the Court that its *independent ERISA counsel*, Dechert LLP ("Dechert"), and the DST Advisory Committee, have concluded the opposite. (Dkt. No. 258-1). After carefully evaluating ERISA, the terms of the Plan, and the Supreme Court's holding in *LaRue*, Dechert—the DST Advisory Committee's *non-litigation* counsel—concluded that individual Plan participants *may* pursue and recover Plan losses in their own *individual* accounts. Of course, this was also the position of DST's *litigation counsel and both the DST Advisory Committee and the DST Compensation Committee* before DST recognized the vigor with which the Arbitration Claimants would pursue claims rather than be intimidated or otherwise dissuaded by the prospect of having to arbitrate individually.

[6] In *Abernathy*, DoorDash's agreement with its couriers imposed mandatory individual arbitration. When a group of 5,879 couriers complied with those agreements by demanding arbitration, DoorDash balked at the prospect of having to arbitrate with thousands of workers and moved to stay the arbitration proceedings pending final approval of a class action settlement. *Id.* at 1064-65. Judge William Alsup refused to countenance the bait and switch, explaining:

> For decades, the employer-side bar and their employer clients have forced arbitration clauses upon workers, thus taking away their right to go to court, and forced class-action waivers upon them too, thus taking away their ability to join class-actions to vindicate common rights. The employer-side bar has succeeded in the United States Supreme Court to sustain such provisions. The irony, in this case, is that the workers wish to enforce the very provisions forced on them by seeking, even if by the thousands, individual arbitrations, the remnant of procedural rights left to them. The employer here, DoorDash, faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. No

3

If, after having *compelled arbitrations*, DST succeeds in extinguishing the rights of the Arbitration Claimants simply because it has decided that it can more cheaply resolve the case through a mandatory class action settlement, it will make a mockery of the notion that Federal Courts are fair and impartial arbiters of the truth and will turn on its head the long-standing principles underpinning private arbitration agreements and class action waivers. It will lead, instead, to the inexorable conclusion that justice favors large corporations, protecting them *even from themselves*.

## ARGUMENT

The Arbitration Claimants are each an individual participant in the DST Systems, Inc. 401(k) Profit Sharing Plan ("Plan") and bound by DST's Arbitration Program Agreement (the "Arbitration Agreement"). The Arbitration Claimants were, by the force of a binding order, *compelled* to individual arbitration by the Court in *DuCharme v. DST Systems, Inc.*, No. 4:17-cv-22-BCW, 2017 WL 7795123 (W.D. Mo. June 23, 2017) (order granting motion to compel arbitration and dismiss the amended complaint) and were likewise guided by the decision compelling arbitration in *Cooper v. Ruane Cunniff & Goldfarb Inc.*, No. 16CV1900, 2017 WL 3524682 (S.D.N.Y. Aug. 15, 2017). In fact, after it successfully compelled arbitration in *DuCharme*, DST *instructed* the Arbitration Claimants that they "may initiate an individual arbitration proceeding under the Arbitration Program" (Schermerhorn Decl. at ¶ 6.)

---

doubt, DoorDash never expected that so many would actually seek arbitration. Instead, in irony upon irony, DoorDash now wishes to resort to a class-wide lawsuit, the very device it denied to the workers, to avoid its duty to arbitrate. This hypocrisy will not be blessed, at least by this order.
*Id.* at 1067.
The very same admonition should be directed at the DST Defendants here. Surprised that hundreds, albeit not thousands, of participants have brought ERISA § 502(a)(2) claims on their own behalf, the DST Defendants now, as a matter of litigation strategy, falsely assert that *all* Plan participants, *including Mr. Cooper and Mr. DuCharme*, must relinquish their contractual right to arbitrate simply because DST has decided that it can more cheaply dispose of the claims through an unlawful *mandatory* class action settlement with putative class counsel who, as the Department of Labor makes plain, do ***not*** represent the interests of Plan participants.

4

To date, the Arbitration Claimants have won 57 of 63 cases resolved on the merits in mandatory arbitration. (*Id*. at ¶¶ 14, 19, 21.) Seventy-Three (73) additional Arbitration Claimants have completed the trial of their cases and are awaiting awards. (*Id.* at ¶ 20.) Hundreds more are presently scheduled for their individual merits hearings *this year*. (*Id.* at ¶ 13.)

As for those Arbitration Claimants who have *already won*, their completion of the arbitration process is proof that the mandatory settlements proposed by the *Ferguson* are inadequate and against the interests of the Plan. Take, for example, Claimant John Doe.[7] In his individual arbitration, John Doe was awarded $56,501 in damages *plus* an additional $156,607.44 in costs and attorneys' fees. (*Id.* at ¶ 16.) Under the damages model now advanced by the *Ferguson* Plaintiffs, however (which, for reasons explained below, is both factually flawed and against the interests of the Plan participants), John Doe would only have been able to prove damages totaling $27,113.44. If 9370 had been blocked from arbitration, and made instead to accept the *Ferguson* Plaintiffs' settlements, John Doe would be eligible to receive between $21,981.89 and $24,944.26, *before a further reduction for attorneys' fees and costs.* Assuming the Court awards Class Counsel 25% in attorneys' fees, John Doe's share of the Settlement Fund would be between $16,486.47 and $18,708.19, less administrative and other costs not yet accounted for. In other words, under the terms of the proposed settlements, a class member with losses equal to John Doe's would recover less than 1/3 of what John Doe received in his arbitration award (not counting attorneys' fees and costs which, in the arbitrations, are awarded separately and *in addition* to the damages award).[8]

---

[7] Claimants' counsel is using an alias to protect the Arbitration Claimant's identity. Claimant's Counsel will share the identity of John Doe and Jane Doe with the Court, *in camera*, if requested.

[8] By way of another example, it is estimated that under the damages model advanced by the *Ferguson* Plaintiffs, Jane Doe, who *settled with DST*, would only be able to prove damages totaling $92,137.21. If Jane Doe had been blocked from pursuing her own settlements, and made instead to accept the *Ferguson* Plaintiffs' settlements, it is estimated that Jane Doe would only be eligible to receive between $75,039.58 and $84,637.67, *before a further reduction for attorneys' fees and costs.* Assuming the Court awards Class Counsel 25% in attorneys' fees, Jane Doe's share of the Settlement Fund would be between $56,279.69 and $63,478.25, less administrative and other costs not yet accounted for. These amounts are less than 1/3 of what Jane Doe actually received. (Schermerhorn Decl., ¶ 17.)

5

It makes no sense to enjoin John Doe—or any other similarly situated Plan participant—from seeking to recover the sum of their losses as John Doe has done. It makes even less sense when one considers that the three *Ferguson* Plaintiffs, who chose to opt out of the Arbitration Agreement, are seeking to control the outcome for so many others who are presently enjoying the *benefits* of arbitration. Simply put, the *Ferguson* Plaintiffs' interests are antagonistic both to those who have elected arbitration and to the Secretary of Labor, which, as the Court previously affirmed, is tasked with ensuring that the "Plan participants' interests are being adequately represented." (Dkt. No. 94 at 9.) Accordingly, the Motions for Preliminary Approval must be denied.

## I.      The Settlement Class, the Proposed Injunction, and the Separate Settlements Should be Denied Preliminary Approval

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Class certification is proper "only if the trial court is satisfied, after a rigorous analysis," that the prerequisites of Rule 23(a) and 23(b) have been satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). The *Ferguson* Plaintiffs have failed to meet their evidentiary burden.

### A.      Standard of Review

Courts have long recognized that "settlement class actions present unique concerns for absent class members." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir.1998). Thus, the Court has a fiduciary duty to look after the interests of those absent class members. *See, e.g. Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1078 (2d Cir.1995) (noting that "the district court has a fiduciary responsibility to ensure that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately" (internal quotation marks omitted)); *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 319 (3d Cir.2011) (stating that "trial judges bear the important responsibility of protecting absent class members"); *Reynolds v.*

6

*Beneficial Nat'l Bank,* 288 F.3d 277, 280 (7th Cir.2002) (at the settlement phase, the district judge is "a fiduciary of the class," subject "to the high duty of care that the law requires of fiduciaries"); *Staton v. Boeing Co.,* 327 F.3d 938, 972 n. 22 (9th Cir.2003) (it is the district court's duty to police "the inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees.").

Accordingly, under Rule 23, "[i]t is not enough that both sides may have stipulated to certification, the court is bound to conduct its *own* thorough rule 23(a) inquiry." *Izzio v. Century Golf Partners Mgmt., L.P.*, 670 F. App'x 348, 350 (5th Cir. 2016) (emphasis in *Izzio*). Under the new amendments to Rule 23 which took effect on December 1, 2018, the Court may grant preliminary approval to a proposed settlement class *only if* it determines that it "*will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (quoting Fed. R. Civ. P. 23(e)(1)(B)(i–ii) (emphasis added)). *See* Fed. R. Civ. P. 23 advisory committee's note to the 2018 amendment ("The decision to give notice of a proposed settlement to the class is an important event. It should be based on a solid *record* supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." (Emphasis added.)).

In fact, when confronted with a settlement class, the requirements for class certification in Rule 23(a) "demand undiluted, *even heightened*, attention." *Id.* (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997), emphasis added); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) ("Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must *ensure* that the requirements of Rule 23(a) and (b) have been met. These

7

requirements should not be watered down by virtue of the fact that the settlement is fair or equitable." (Emphasis added.)).

To guide its analysis during the preliminary approval stage, the Court must look to the factors contained in the text of Rule 23(e)(2), as well as the "*Grinnell*" factors. *In re Payment Card*, 330 F.R.D. at 28-29. An analysis of these factors here demonstrate that the three *Ferguson* Plaintiffs do **not** satisfy Rule 23(a), Rule 23(b), Rule 23(e) nor the *Grinnell* factors. Therefore, the motions for preliminary approval *must* be denied.

### B.    The Court Cannot Certify a Class Action Under Rule 23

#### 1.    The Settlement Class Fails Rule 23(a)

Under Rule 23(a), before class certification can be granted, Plaintiffs must demonstrate that (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").

The Arbitration Claimants do not dispute that the prerequisite of numerosity is satisfied here.[9] However, for the reasons set forth below, as well as for the reasons already set forth in RCG's own Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification (Dkt. No. 140) and in RCG's Memorandum of Law in Opposition to the DST Defendants' Motion for a Preliminary Injunction (Dkt. No. 167), and as previously explained in memoranda previously submitted by and/or on behalf of the Arbitration Claimants (Dkt. Nos. 175, 182, 258), the *Ferguson* Plaintiffs do not (and cannot) demonstrate that the typicality, adequacy, and commonality prerequisites of Ruel 23(a) are satisfied.

---

[9] Plaintiffs suggest that the class would consist of "as least 9,000 participants," (Dkt. No. 266-2 at 2) but this is plainly incorrect because approximately 95% of those more than 9,000 participants are subject to the Arbitration Agreement.

8

In short, the *Ferguson* Plaintiffs continue to ignore the critical and unavoidable fact that both *the Plan* and the vast majority of proposed class members—approximately 95%—are bound by an Arbitration Agreement *requiring* that "*[a]ll claims must be asserted, heard and resolved on a single Associate basis*." Class representatives are fiduciaries who must protect the class's interests with "diligence, wisdom and integrity." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949). Here, in contrast to them protecting the interests of the class, the *Ferguson* Plaintiffs seek to *extinguish* the constitutionally recognized property interests and contractual rights possessed by each of the Arbitration Claimants, hundreds of whom have already invoked their arbitration rights and entitlements and are well on their way to significant recoveries.

The *Ferguson* Plaintiffs also ignore the substantive rights *earned* by numerous Arbitration Claimants in the course of their individual arbitration proceedings. Fifty-Seven (57) Arbitration Claimants have already won awards in arbitration against DST that exceed the sum of amounts recoverable through the proposed mandatory settlements. (Schermerhorn Decl. at ¶¶ 14, 19, 21.) Seventy-Three (73) others have already completed merits hearings and are awaiting awards. (*Id.* at ¶ 20.) More than 200 others have been given dates on which their hearings will be held following months of litigation, discovery and motion practice (and still more than 100 others have duly filed their claims in arbitration, thereby invoking their rights and entitlements). (*Id.* at ¶ 13.) Thus, at least 490 putative Class Members have significant and valuable rights, protected by the Federal Arbitration Act (FAA), that the *Ferguson* Plaintiffs seek to extinguish simply because, according to them, it will provide the defendants—who have *twice* compelled individual arbitration—"complete peace." (Dkt. No. 266-1 at 24.) It is no wonder the Secretary of Labor "strongly object[s]" to the deal.

9

Indeed, courts have repeatedly denied class certification in instances where proposed class representatives, unlike many (or most) absent class members, are not subject to arbitration agreements. *See, e.g., Jensen v. Cablevision Systems Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019) ("The mere potential that the relevant arbitration provision is valid is sufficient to preclude a named plaintiff who opted out of the provision from representing a class largely made up of individuals that may be subject to the agreement.").[10] This is because the FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms," *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989), and "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). In fact, the purpose of the FAA "was to assure those who desired

---

[10] *See also O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018) (reversing certification and remanding for further class certification proceedings where "[t]he class as certified includes drivers who entered into agreements to arbitrate their claims and to waive their right to participate in a class action with regard to those claims"); *Avilez v. Pinkerton Gov't Servs.*, 596 F. App'x 579, 579 (9th Cir. 2015) ("The district court abused its discretion to the extent it certified classes and subclasses that include employees who signed class action waivers" since the putative class representative did not sign a class action waiver); *Quinlan Macy's Corporate Services, Inc.*, No. CV-12-00737-DDP, 2013 WL 11091572, *3 (C. D. Cal. Aug. 22, 2013) (plaintiff was atypical where he was not subject to arbitration procedures, but "approximately 94.5% of the . . . employees [he] seeks to represent . . . agreed to arbitrate 'all employment-related legal disputes'"); *Renton v. Kaiser Found. Health Plan, Inc.*, No. C00-5370RJB, 2001 WL 1218773, at *7 (W.D. Wash. Sept. 24, 2001) (proposed class representative in ERISA action was not subject to an arbitration agreement and therefore stood "in a different position legally than many class members"); *Conde v. Open Door Marketing, LLC*, 223 F. Supp. 3d 949, 961 (N.D. Cal. 2017) (rejecting the proposition that courts could "ignore arbitration agreements signed by every absent class member, so long as there is one named plaintiff who is not bound by the arbitration agreement"); *Tan v. Grubhub, Inc.*, No. 15-cv-05128-JSC, 2016 WL 4721439, at *6 (N.D. Cal. July 19, 2016) (finding proposed class representative atypical and inadequate where he opted out of arbitration provision); *Zieger v. Advance America*, C.A. No. 13-1614-GMS, 2014 WL 7388365, at *7 (D. Del. Dec. 29, 2014) (declining to grant class certification where proposed class representative opted out of dispute resolution clause that contained a class action waiver); *Macedonia Distrib., Inc. v. S-L Distribution Co., LLC*, No. SACV171692JVSKESX, 2020 WL 610702, at *6 (C.D.Cal. Feb. 7, 2020) ("typicality and adequacy of representation lacking where the lead plaintiff is not subject to the same arbitration provisions as the putative class"); *Tschudy v. J.C. Penney Corp., Inc.*, 2015 WL 8484530, at *3 (S.D. Cal. Dec. 9, 2015) (typicality and adequacy not satisfied where named plaintiffs not subject to arbitration provision that covered class members); *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-CV-04456-PJH, 2018 WL 6727825, at *7 (N.D. Cal. Dec. 21, 2018) (denying class certification where the named plaintiffs were not subject to an arbitration and class waiver provision was applicable to members of the putative class).

10

arbitration…that their expectations would not be undermined by federal judges." *Southland Corp. v. Keating*, 465 U.S. 1, 13 (1984). Accordingly, the FAA "requires that [federal courts] rigorously enforce agreements to arbitrate, *even if the result is 'piecemeal' litigation*.'" *Byrd*, 470 U.S. at 221 (emphases added).

Here, the Arbitration Claimants desire, *and are presently pursuing*, arbitrations. The Plan, too, desires arbitration. The Plan expressly states that "any and all claims arising out of or related to the Plan…***are subject to mandatory arbitration <u>and class action waiver</u>*** as provided under the Arbitration Policy in effect as part of the DST Systems, Inc., Associate Handbook to the extent applicable to Company Employees, the terms of which are incorporated herein by reference." (Dkt. No. 172-13.) According to DST, the Plan's adoption of the Arbitration Agreement "incorporates the terms of DST's Arbitration Agreement ***into the Plan***, and thereby ***explicitly binds the Plan to the terms of that Agreement***."  (Dkt. No 172-4.) "[I]t is an expression," according to DST, "of ***intent by the Plan to be bound by the Arbitration Agreement***, just as Mr. Ducharme is bound by it." (*Id.*) DST continued: "neither the Arbitration Agreement nor the Amendment prohibits Mr. Ducharme or any other party to the Arbitration Agreement from arbitrating a breach of fiduciary duty claim *in connection with purported losses to their individual accounts*." (*Id.* Emphasis added.)

Plan fiduciaries, *including DST*, "are *required* to discharge their duties 'in accordance with the documents and instruments governing the plan.'" *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) (quoting 29 U.S.C § 1104(a)(1)(D)) (emphasis added). DST is in breach of this precedent by asserting that the Plan provisions mandating arbitration and prohibiting class or collective actions give way, when it decides, to a *mandatory* class action.  DST and other Plan fiduciaries *must,* if

11

keen on avoiding new, additional, and actionable violations of ERISA, resolve all claims "on a single Associate basis." (Dkt. No 168-2.)

Furthermore, both *this Court* and the District Court for the Western District of Missouri have *ordered* "that to the extent [an arbitration claimant] alleges a § 502(a)(2) as an individual, the Arbitration Agreement at issue is valid and…claims for breach of fiduciary duty fall within the Arbitration Agreement's scope. *Ducharme*, 2017 WL 7795123; *Cooper*, 2017 WL 3524682.[11]

RCG, in its earlier, principled opposition to class certification,[12] accurately described the *Ferguson* Plaintiffs as "seeking to sidestep the Arbitration Agreement, the two prior federal court decisions, and the 477 pending arbitrations." (Dkt. No. 140 at 2.) As RCG pointed out, the Motion for Class Certification was made "following years of related litigation, including (i) decisions by this Court and the U.S. District Court for the Western District of Missouri ruling that the Arbitration Agreement is enforceable and dismissing, on the basis of the Arbitration Agreement, two putative class actions that were virtually identical to the instant case, and (ii) 477 arbitrations filed under the Arbitration Agreement before the American Arbitration Association." (*Id.* at 1-2.)

DST was equally critical:

> Plaintiff disregards all of this history, apparently taking the position that, because she is purportedly not subject to the Arbitration Agreement, she can bring a putative class action on behalf of all participants in the Plan, despite the fact that the overwhelming majority of those participants are bound by the Arbitration Agreement. That Plaintiff's proposed class would include the named plaintiffs in both dismissed actions, James DuCharme and Clive Cooper, even though two federal district courts, including this Court, already have found that the Arbitration Agreement barred those very plaintiffs from pursuing virtually identical actions, demonstrates the futility of Plaintiff's position. What is more, Plaintiff's proposed class simply ignores the fact that both former plaintiffs (and all other participants who are subject to the Arbitration

---

[11] Although *Cooper* is currently on appeal, its final resolution is irrelevant as to the claims against DST. DST is not party in the *Cooper* case and remains bound by the final and non-appealed order in *DuCharme*. Since Ruane consented to arbitration and has *already settled* with the Arbitration Claimants, the final resolution of *Cooper* is also irrelevant as to the arbitration claims against Ruane. Finally, Ruane's role in *Cooper* is distinguishable from DST in that Ruane sought to bind the claimants to arbitration based upon a privity argument. DST was the actual author of the arbitration policy and was responsible for placement of the mandatory arbitration clause and class action waiver into the Plan.

[12] Notably, RCG does not now deny or repudiate its previous opposition to class certification. It simply remains silent.

12

Agreement) not only waived their rights to "assert claims on behalf of multiple [participants] or as a class action or collective action" but also waived their rights to "have a claim asserted on [their] behalf by another person as a class representative or otherwise.

The Court should not countenance Plaintiff's attempt to evade the application of the terms of the Arbitration Agreement.

(Dkt. No. 172-9 at 1-2.)

As for the prerequisites to class certification, RCG asserted that:

Plaintiffs cannot meet the requirements of Rule 23 because the DST Systems, Inc. 401(k) Profit Sharing Plan (the "Plan") contains an arbitration agreement binding 95% of the proposed class (the "Arbitration Agreement"). In the Arbitration Agreement, 95% of Plaintiffs' proposed class waived not only their right to "assert claims on behalf of multiple [participants] or as a class action or collective action" *but also* their right to have claims asserted on their "behalf by another person as a class representative or otherwise."

(*Id.* at 1.)

At this juncture, of course, it is accurate to state that the Arbitration Claimants have *exercised* their constitutionally recognized and statutorily protected contractual right to proceed with individual arbitrations. Thus, as RCG stated:

Plaintiffs have not met, *and cannot meet*, their burden under Rule 23 of demonstrating by a preponderance of the evidence that they have met each of the rule's requirements. Specifically, because Plaintiffs, who are not bound by the Arbitration Agreement, seek to represent a class comprised primarily of individuals subject to [and who enjoy the *benefits* of] the Arbitration Agreement, the case law is clear that Plaintiffs fail to satisfy the typicality, adequacy of representation, and commonality requirements of Rule 23(a). Further, permitting Plaintiffs to represent a class made up primarily of participants bound by the Arbitration Agreement would fly in the face of the purpose and language of the Federal Arbitration Act, which the Supreme Court has directed is to be "rigorously enforce[d]." *Perry v. Thomas*, 482 U.S. 483, 490 (1987) (alteration in original).

(*Id.* at 2 (emphasis added).)

Indeed, in all the cases refusing to certify a class consisting of putative members bound by arbitration, the courts have uniformly observed that class representatives who did not agree to arbitrate *cannot* represent class members who did because the would-be representatives lack the

13

will and ability to enforce the arbitration agreements. *See Conde*, 223 F. Supp. 3d at 960 (representatives atypical because "Plaintiffs . . . have no interest in the enforceability of the arbitration agreement itself"). That is precisely the problem here. The *Ferguson* Plaintiffs have *no interest* in enforcing DST's Arbitration Agreement, even though the Plan *explicitly agreed to arbitration*. On the contrary, they seek to *eliminate* the lawful, contractual rights bargained for by the Arbitration Claimants and adopted by the Plan so that *the defendants*, each of whom has *compelled* individual arbitration, can achieve "complete peace," at a deeply discounted price.

Further, the proposed settlements amply demonstrate that the *Ferguson* Plaintiffs are not adequate representatives, not merely because they seek to destroy the benefits of arbitration, but because they have not otherwise acted in the best interest of the Plan. For example, the *Ferguson* Plaintiffs assert that objections regarding the adequacy of the settlements should "fall on deaf ears" since, allegedly, the "net settlement value of the settlement reached with DST has an average value for Settlement Class Members alone that exceeds the value of the" settlement reached between the Arbitration Claimants and RCG. (Dkt. Nos. 266-1 at 17, fn. 12.) But this apples-to-oranges comparison is utter nonsense and sidesteps the truth. The Arbitration Claimants have been overwhelmingly successful in recovering ***all*** their losses from DST, alone, in amounts that *far exceed* what they will recover from the *combined* net settlement value reached between the *Ferguson* Plaintiffs and *all* the defendants. (Schermerhorn Decl. at ¶¶ 16-19.) In other words, while the majority of Arbitration Claimants chose to settle with RCG, they *preserved*, and are *exercising*, their right to recover the entire balance of their retirement losses (plus costs and attorneys' fees) from DST, the most financially solvent and primary fiduciary.[13] *And they are succeeding*.

---

[13] Critically, "when the law rejects a right of contribution, this means it refuses to extend its protection to a tortfeasor who complains of being forced to pay more than his fair share of the plaintiff's damages. Under the common law rule of no contribution among tortfeasors, a plaintiff can if he wants satisfy his entire damage claim out of the assets of one defendant and let others who are equally or more culpable off scot-free—and the unlucky defendant has no recourse."

Moreover, the *Ferguson* Plaintiffs are just wrong. Four Hundred and Seventy-Four (474) of the Arbitration Claimants made a *voluntary* settlement with RCG for $12 million,[14] leaving more than 9,000 Plan participants with the right to pursue their own claims against RCG, either individually or as a beneficiary of the Secretary of Labor's action. The *Ferguson* Plaintiffs, on the other hand, propose a *mandatory* settlement with RCG for $21.5 million, *to be split between the more than 9,500 Plan participants*. The *Ferguson* Plaintiffs also seek to *extinguish* the right of the Arbitration Claimants and others to recover the balance of their retirement savings from DST. They ask the Court to approve a settlement that will result in total recoveries that are *far less* than those being presently achieved in arbitration. In other words, rather than advocate for the interests and recoveries of the Class, the *Ferguson* Plaintiffs, none of whom are party to the Arbitration Agreement, advocate for the <u>interests *of DST*</u>.

In sum, the Arbitration Claimants have *proved* the benefit of arbitration: *lower costs, greater efficiency and speed*[.]'" *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) (emphasis added) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010)). Through the vigorous efforts of their chosen counsel,[15] the Arbitration Claimants have also proved that, while

---

*Donovan v. Robbins*, 752 F.2d 1170, 1178 (7th Cir. 1985). In the Eighth Circuit, there is no claim for contribution. *Travelers Cas. & Sur. Co. of Am. v. IADA Servs., Inc.*, 497 F.3d 862, 867 (8th Cir. 2007). Therefore, there was no need to apportion fault between the RCG and DST and Arbitration Claimants are entitled, if they wish, to satisfy the *entire* damage amount remaining out of the assets of DST. As Judge Coffey observed: "The legislative history of section 1105 clearly reveals that Congress intended to adopt the trust law principle of joint and several liability for ERISA, and thereby allow ERISA plaintiffs to collect their full amount of damages from any or all co-trustees found to be in breach of their fiduciary duty." *Donovan v. Robbins*, 752 F.2d at 1185–86. Here, the *Ferguson* Plaintiffs ask the Court to *enjoin* the Arbitration Claimants from collecting the remaining amount of damages from DST. While this may benefit DST, it does *not* benefit the Plan or the participants of the Plan.

[14] The settlement was joined by the *Canfield* and *Mendon* Plaintiffs as well as by Michelle Monteleone, Peggy Kellogg, Georgia Kellogg, and Les Otis.

[15] Proposed class counsel have not prosecuted the case diligently. Although this case was filed more than three years ago, they admit that it "the parties have neither taken nor scheduled *any* depositions, [nor] have [they] identified experts or exchanged expert reports." (Dkt. No. 125 at ¶¶ 4-5, 7.) Compare and contrast these meager efforts with the progress made by the Arbitration Claimants, who have already accomplished these tasks *and more*. As of today, the Arbitration Claimants have reviewed all of the more than 100,000 pages of documents produced by DST and the thousands more produced by RCG; they have taken the deposition of DST's corporate representative on 26 relevant topics; they have deposed DST's former ERISA counsel (Phillip McKnight) who attended and kept the Minutes of the Advisory Committee meetings; they have deposed the Chairwoman of the Advisory Committee; and they have deposed the

15

$79,000,000 might appear to be a substantial sum, it is *far, far less* than the sum of retirement losses caused by the defendants' fiduciary breaches, as asserted by the Secretary of Labor. In other words, the Arbitration Claimants have proved that *Ferguson* Plaintiffs are neither common, typical, nor adequate representatives.

### 2.    The Settlement Class Fails Rule 23(b)(1)

In addition to the facts and law which mitigate against the *Ferguson* Plaintiffs' obligation to satisfy Rule 23(a), for the reasons set forth in RCG's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification (Dkt. No. 140) and as previously explained in memoranda submitted by and/or on behalf of the Arbitration Claimants (Dkt. Nos. 175, 182, 258), class certification is also inappropriate under Rule 23(b)(1).

The foundation of the *Ferguson* Plaintiffs' arguments under both subdivisions (b)(1)(A) and (B) is that they (and every other plan participant) are not just entitled, *but required*, to seek relief on behalf of the entire Plan. That is *not* the law. As the Supreme Court made clear in *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248 (2008), the "plan as a whole" language that was used by the Court in *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985), is "beside the point in the defined contribution context." Indeed, *LaRue* squarely held that participants in a defined contribution plan can bring ERISA § 502(a)(2) claims *on their own behalf*.[16]

---

Committee member delegated to be the liaison between DST and RCG. The Arbitration Claimants have also prepared and produced for deposition three expert witnesses on the topics of ERISA, securities investments, and damages; they have taken the deposition of both experts retained by DST; they have presented and cross-examined fact and expert witnesses in more than 16 week-long hearings involving 117 arbitration actions; and they have argued innumerable motions. The Arbitration Claimants' counsel have also argued *and won* numerous motions for the separate award of costs and attorneys' fees so that the Arbitration Claimants may receive 100% of their gross awards and they have argued arbitration appeals so that the Arbitration Claimants may *keep* their awards.

[16] *See In re Computer Scis. Corp. ERISA Litig.*, 2008 WL 7527874, at *2 (C.D. Cal. Sept. 2, 2008) (holding that, in accord with *LaRue*, participants in a defined contribution plan can bring ERISA § 502(a)(2) claims *on their own behalf*); *Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 666 F.3d 68, 71 fn. 1 (2d Cir. 2011) (observing that the Supreme Court "made clear" in *LaRue* that "ERISA permits an individual plan member to bring a breach of fiduciary duty claim against the administrator of a defined contribution plan"); *Smith v. Stockwell Const. Co.*, No. 10-CV-608S, 2011 WL 6208697, at *4 fn, 3 (W.D.N.Y. Dec. 14, 2011) (holding that while plaintiff participants were *previously* required to bring claims on behalf of the *entire* plan, that "requirement changed for plaintiffs seeking to

16

This is true even though such actions are still "technically brought on behalf of the Plan." *Cusack-Acocella v. Dual Diagnosis Treatment Ctr., Inc.*, 2019 WL 7172597, at *12 (C.D. Cal. Oct. 7, 2019); *see also John Blair Commc'ns, Inc. Profit Sharing Plan v. Telemundo Grp., Inc. Profit Sharing Plan*, 26 F.3d 360, 363 (2d Cir. 1994) (holding that in a defined contribution plan, "an individual plan member holds his or her own account and the eventual benefits received by the plan member are tied exclusively to the level of earnings on those funds during the life of the plan."). "Although § 502(a)(2) claims seek relief on behalf of a plan, the Supreme Court has recognized that such claims are inherently individualized when brought in the context of a defined contribution plan like that at issue." *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019).

Accordingly, while such claim *may* be suitable for class-wide adjudication, the procedural mechanism must yield to the statutory and contractual rights of would-be class members to proceed with individual arbitration. Where individual relief is sought or required by the Plan, for example, or where individual relief is otherwise desired—and contractually *required*—by those with standing to assert claims on their own behalf, mandatory class-wide adjudication must be denied.

In this case, the Plan expressly states that "any and all claims arising out of or related to the Plan…*are subject to mandatory arbitration and class action waiver* as provided under the Arbitration Policy in effect as part of the DST Systems, Inc., Associate Handbook to the extent applicable to Company Employees, the terms of which are incorporated herein by reference." (Dkt. No. 172-13.) The Arbitration Agreement, meanwhile, not only waived the right to "assert claims

---

recover under a defined contribution plan following the Court's decision in *LaRue*."); *Fisher v. JPMorgan Chase & Co.*, 303 F. App'x 979, 981 (2d Cir. 2008) (summary order) ("*LaRue* held that plaintiff participants in defined contribution pension plans may seek recovery for misconduct that impaired the value of plan assets in the participant's individual accounts") (internal quotations and alterations omitted.) Thus, as numerous courts have now recognized, it is no longer appropriate to invoke Rule 23(b)(1) just because an ERISA claim is presented. *See, e.g.,* **Error! Main Document Only.***In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2017 WL 1273963, at *13 (S.D.N.Y. Mar. 31, 2017); **Error! Main Document Only.***Carr v. Int'l Game Tech.*, 2012 WL 909437, at *7 (D. Nev. Mar. 16, 2012); *In re Computer Scis. Corp. ERISA Litig.*, 2008 WL 7527874, at *2.

on behalf of multiple [participants] or as a class action or collective action" but also waived the rights to "have a claim asserted on behalf [of the Arbitration Claimants] by another person as a class representative or otherwise." (Dkt. No. 141-1 at 4-5.)

Beth Sweetman, the former Chairwoman of the DST Advisory Committee, testified that the Plan adopted the Agreement and class action waiver because individual arbitration "was in the best interest of the plan participants." (Dkt. No. 203-2 at 115-117.) Meanwhile, the Secretary of Labor has asserted that efforts to enjoin the arbitrations "fly in the face of the public policy forged in ERISA" and "would do a grave disservice to the public interest that is memorialized in ERISA itself." (*Payne*, ECF No. 40 at 26.) "Attempts to enjoin the arbitrations," the Secretary explained, "is also contrary to the clear public policy enshrined in the [FAA] that favors arbitration." (*Id.*)

Indeed, the FAA *guarantees* to Arbitration Claimants the right to enforce their arbitration agreements according to their terms, "*including terms providing for individualized proceedings*." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) (emphasis added). The *Ferguson* Plaintiffs' Motions for Preliminary Approval fails to make any reference to the binding, enforced, *judicially upheld*, and privately negotiated arbitration agreements. Such silence speaks volumes and is emblematic of the parties' efforts to misdirect this Court. Accordingly, for these reasons as well as for those explained below, the proposed class fails Rule 23(b)(1).

### i.   Individual Suits Do Not Impose Incompatible Standards

Here, the proposed mandatory class cannot be certified under Rule 23(b)(1)(A) because individual damages claims would not subject any defendant to "incompatible standards of conduct." To illustrate, 72 Arbitration Claimants have *already prevail*ed on their individual claims while 6 others have not. (Schermerhorn Decl., ¶¶ 19, 21, 23.) The resulting judgments do not create incompatible standards. The defendants can satisfy a money judgment in favor of the winning claimants' individual account (as they *have*) without in any way violating the small handful of

18

judgments awarding nothing to the others (and vice-a-versa). That is why every court to consider the issue has held that 23(b)(1)(A) is not satisfied by the mere possibility that a defendant will be found liable to some plaintiffs but not to others.[17]

For largely the same reasons, the possibility that different fact-finders may reach different conclusions—such as whether defendants breached their duties under ERISA—does not risk imposing incompatible standards of conduct. Because the conduct at issue here occurred entirely in the past in an account *that no longer exists*, any finding that defendants did or did not breach would, at most, guide the defendants' conduct were they ever to find themselves in an analogous situation, but the possibility of inconsistent precedents does not satisfy Rule 23(b)(1)(A).[18]

### ii.    Individual Suits Do Not Prejudice Other Class Members

The *Ferguson* plaintiffs also fail to articulate how individual suits would impair the rights of other participants, as required under Rule 23(b)(1)(B). This is because *there is no such impairment*. In fact, the opposite is true. The imposition of a mandatory class and a mandatory settlement would impair the rights of the participants, as explained above and amply demonstrated in the record of already-arbitrated cases. As was stated by the court in *Carr*,

---

[17] *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir.) ("The phrase 'incompatible standards of conduct' refers to the situation where different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct" and "requires more, however, than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts.") (internal quotations omitted); *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 n.7 (11th Cir. 2000) ("Because Cohen's class seeks compensatory damages, it cannot be certified as a (b)(1)(A) class"; *Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir. 1986) ("The danger of imposing 'incompatible standards of conduct' on the party opposing the class is also not normally posed by a request for money damages."); *In re Bendectin Prod. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984) ("The fact that some plaintiffs may be successful in their suits against a defendant while others may not is clearly not a ground for invoking Rule 23(b)(1)(A).").

[18] *See Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 633 (6th Cir. 2011) ("even if different courts reached different conclusions about the legality of the OTG subsidy, those decisions do not compel affirmative action by BCBSM and thus, would not impair its ability to pursue a uniform continuing course of conduct."); *Abramovitz v. Ahern*, 96 F.R.D. 208, 215 (D. Conn. 1982) ("The language of the sub-section indicates that it applies only to actions in which there is not only a risk of inconsistent adjudications but also of incompatible conduct, that is, where a defendant is sued by different plaintiffs asking for different and incompatible *affirmative relief*. Hence, it does not reach the case in which different individuals sue the same defendant for monetary relief and one may lose while the other may win." (Emphasis added)).

19

> Prior to *LaRue,* courts granting certification of § 502(a)(2) claims reasoned that a plaintiff who forced defendants to pay damages to a plan would alter the interests of all other potential class members since § 502(a)(2) claims could only be brought on behalf of a plan. *See, e.g., In re Syncor,* 227 F.R.D. at 347 ("If the primary relief is to the Plan as a whole, then adjudications with respect to individual members of the class would 'as a practical matter' alter the interests of other members of the class.") (citation omitted). However, *LaRue* eliminated that risk by holding that participants in a defined contribution plan, such as the Plan here, can bring ERISA § 502(a)(2) claims on behalf of their own individual accounts. 552 U.S. at 256. Because putative class members now have an individual remedy, they can pursue relief on their own behalf. *In re First Am.,* 258 F.R.D. at 622. "Moreover, under usual preclusion rules, the defeat of an individual Plan participant's claim could not adversely affect the individual claim of any other Plan participant." *Id.* (citing *Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 329–30, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)). Accordingly, certification is not appropriate under Rule 23(b)(1)(B) because individual adjudications of the matter would not be dispositive of the interests of absent members in light of *LaRue.*

*Carr*, 2012 WL 909437, at *7.

### iii.   The Court Cannot Obtain Jurisdiction Over Absent Class Members Through Certification of a Rule 23(b)(1) Class

Finally, in addition to their failing Rule 23(b)(1), the three *Ferguson* Plaintiffs completely ignore that the vast majority of class members, and *all* of the Arbitration Claimants, reside outside the Court's limited jurisdiction.

In *Shutts*, *supra*, the Supreme Court considered a class action that purported to adjudicate the rights of a number of persons who lacked the requisite contacts with the forum state to give the court personal jurisdiction over them. The *Shutts* Court stated that "due process requires at a minimum that an absent plaintiff [in a class action] be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." 472 U.S. at 812. In other words, *Shutts* mandates that a plaintiff be permitted to opt out of a proposed class when the court does not have personal jurisdiction over the plaintiff. *Id.* at 811–12; *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 148 (S.D.N.Y. 2001) ("Because adequate

20

notice has been disseminated *and all potential Class Members have been given the opportunity to opt out of this class action*, the Court has personal jurisdiction over all Class Members.").

Only a plaintiff class member who is afforded an opportunity to opt out, but who fails to exercise that option, may be deemed to have consented to jurisdiction. *Shutts* at 812.[19] This is true even of class actions certified under Rule 23(b)(1). *Brown v. Ticor Title Ins. Co.,* 982 F.2d 386 (9th Cir.1992) (holding that absent plaintiffs were not bound by a rule 23(b)(1)–(b)(2) class action for money damages, because the original class action court did not have personal jurisdiction over the plaintiffs and did not provide them with an opt-out right), *cert. dismissed as improvidently granted,* 511 U.S. 117 (1994). *See also In re Real Estate Title & Settlement Servs. Antitrust Litig.,* 869 F.2d 760 (3d Cir.) (reversing an injunction and allowing a collateral attack against a rule 23(b)(1)–(b)(2) class action to proceed in a different jurisdiction), *cert. denied,* 493 U.S. 821 (1989).

Here, for the reasons articulated in the Arbitration Claimants' Reply Memorandum in Support of Defendants' Motion to Dismiss in *Payne*, ECF No. 43, the Court does ***not*** have personal jurisdiction over the Arbitration Claimants, *all* of whom reside <u>outside</u> the State of New York and *none* of whom have sufficient contacts with the State of New York.

    **C.**    **The Court Cannot Grant Final Approval of the Proposed Settlement**

        **1.**    **The Rule 23(e)(2) Factors Weigh Against Preliminary Approval**

            **i.**    **The Ferguson Plaintiffs Do Not Adequately Represent the Class**

---

[19] *See also,* 4 William B. Rubenstein et al., *Newberg on Class Actions* § 13:33 (4th ed. 2011) ("[Under *Shutts,*] absent class members without minimum contacts with the forum had to consent to personal jurisdiction. This could be achieved with notice and opt-out provisions."); Arthur R. Miller et al., *Jurisdiction and Choice of Law in Multistate Class Actions After* Phillips Petroleum Co. v. Shutts, 96 Yale L.J. 1, 52 (1986) ("The right to opt out is essential to the Supreme Court's inference of consent, and that reasoning, in turn, is essential to the Court's validation of jurisdiction over members who have no affiliation with a distant forum."); Note, Stephen T. Cottreau, *The Due Process Right to Opt Out of Class Actions,* 73 N.Y.U. L.Rev. 480, 490 (1998)("Where a state wishes to bind nonresidents lacking minimum contacts with the forum, due process requires the granting of opt out rights to establish consent of the class members to the court's adjudicatory jurisdiction.").

For the reasons set forth above, as well as for the reasons set forth in RCG's Opposition to Plaintiffs' Motion for Class Certification (Dkt. No. 140) and in RCG's Memorandum of Law in Opposition to the DST Defendants' Motion for a Preliminary Injunction (Dkt. No. 167), and as explained in the Intervenor Plaintiffs' previous memoranda (Dkt. Nos. 175, 182), the *Ferguson* Plaintiffs do not (and cannot) demonstrate that they adequately represent the class.

### ii.   The Settlements are Not the Result of Good Faith, Arm's Length Negotiations

In *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005), the Second Circuit held that a court may only approve a class action settlement if it is "fair, adequate, and reasonable, and *not a product of collusion*." *Id.* at 116 (emphasis added). The Plaintiffs here have *not* shown that the settlement is *not* the product of collusion. In fact, a letter was recently circulated to counsel for DST and others[20] that can only (charitably) be described as creating an inference of collusion by DST and proposed Class Counsel. The factual allegations contained in this letter should be considered and the issues raised determined by the Court before finding that the proposed Class Representatives and proposed Class Counsel meet the requirements of Rules 23(a) and 23(g).

### iii.   The Relief Afforded is Inadequate

The Secretary of Labor objects to the proposed settlements because, *inter alia*, the defendants' fiduciary breaches "caus[ed] major losses to the Plan that *far exceed* the proposed settlement amounts." (Dkt. No. 269 at 2, emphasis added.) Indeed, as explained above, the Arbitration Claimants are presently on course to recover between $41,000,000 and $84,000,000 (*plus* attorneys' fees and costs) *for 490 out of 9,500 claims.* If extrapolated to the entire Plan, the Arbitration Claimants are on course to prove damages totaling between approximately $127,000,000 and $261,000,000 (*plus* attorneys' fees and costs). If putative Class Counsel is

---

[20] This letter was disclosed to the Court on November 4, 2020. (Dkt. No 231-1.)

awarded a 25% attorneys fee (plus $150,000 in expenses plus $850,000 in Notice and other Settlement Administration costs), that would reduce the proposed Settlement Fund to approximately $59 million, or less than 1/4 to 1/2 of the Plan's total loss.

The Arbitration Claimants' remarkable result (a success rate of greater than 92%) contradicts much of what the *Ferguson* Plaintiffs contend about the complexity of the case and the risks of continuing to litigate and militates against the substantially reduced settlement the *Ferguson* Plaintiffs seek to impose.[21] Moreover, the Arbitration Claimants have now *proved* that, as the Secretary asserts, the losses caused to the Plan *far exceed* the proposed settlement amounts.

In fact, while the *Ferguson* Plaintiffs admit that damage models "based upon higher concentration levels" *produce higher damages*, they baselessly assert that concentrations in excess of 6.5% (a limit entirely unsupported by the facts) "could prove difficult to defend, based upon a full record in this case." (Dkt. No. 266-1 at 16.) That is false. The evidence *proves*, and *DST admits*, that a concentration cap of 25% "was in the best interest of the participants of the Plan." (*See, e.g.,* Dkt. Nos. 192-1, 221-1, 227-1, 250.[22]) Indeed, the Arbitration Claimants have won more than 90% of cases to be resolved on the merits, each of which was tried and resolved on a damage model that imposes a cap of ***no less than 25%*** (except for the period after October 1, 2015, at which time the PSP should have divested of all VRX). 6.5% was selected *to minimize* the computation of losses so as to improve the appearances of the settlement value.

In other words, the *Ferguson* Plaintiffs selected a concentration limit of 6.5% solely for the purpose of justifying the inadequate sum of their settlements. It is a fabricated limitation that, like

---

[21] As for those Arbitration Claimants who have lost, they will still receive the benefit of their pro rata share of any Plan losses the Secretary successfully recovers in *Scalia.* (*Scalia*, ECF No. 40 at 17.) In other words, by permitting both the Arbitration Claimants and the Secretary to proceed against the Defendants, as it their right, the Plan participants are afforded the *greatest* protection within the bounds of their losses.

[22] *See also Scalia*, ECF No. 1 at 10, 12.

23

much of the proposed settlements, undermines ERISA's remedial scheme and protects only the interests of *the defendants*.

**2.     The Remaining *Grinell* Factors Weigh Against Preliminary Approval**

For the reasons set forth above, as well as in in RCG's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification (Dkt. No. 140) and in RCG's Memorandum of Law in Opposition to the DST Defendants' Motion for a Preliminary Injunction (Dkt. No. 167), and as explained in the Intervenor Plaintiffs' previous memoranda (Dkt. Nos. 175, 182), the *Grinnell* factors weigh against preliminary approval.

For example, the Arbitration Claimants, representing 32.5% of the Plan losses, *oppose* the settlements. Additionally, the *Ferguson* Plaintiffs admit that "there is no evidence that Defendants could not withstand a greater judgment." (Dkt. No. 266-1 at 15.) Finally, as demonstrated above, the settlements are *not* within the range of reasonableness in light of the recovery possible (*i.e.*, $261,000,000, *plus* attorneys' fees and costs) and attendant risks (nearly *zero*).

**II.     The Court Cannot Grant the Requested Injunctive Relief**

"A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction." *Hyundai Mipo Dockyard Co. v. AEP/Borden Indus. (In re Rationis Enters. of Pan.)*, 261 F.3d 264, 270 (2d Cir. 2001). The personal jurisdiction requirement applies even to injunctions/bar orders entered as part of a class action settlement. *Carlough v. Amchem Prod., Inc.*, 10 F.3d 189, 200 (3d Cir. 1993). Thus, prior to notice *and the opt out period*, and absent minimum contacts with New York or consent to its jurisdiction, an injunction would violate due process rights of the Arbitration Claimants and other absent class members. *Id.* ("Strictly and narrowly enforcing the requisite opportunity to opt out for Rule 23 class plaintiffs before exerting personal jurisdiction comports with the overall class action mechanism and is derived from policy considerations bearing upon comity and federalism.")

24

Here, for the reasons stated above, as well as for those stated in the Intervenor Plaintiffs' Joint Memorandum on Law in Opposition of the DST Defendants' Order to Show Cause for a Preliminary Injunction (Dkt. No. 175), the Court does *not* have personal jurisdiction over the Arbitration Claimants and, therefore, cannot grant the requested injunctive relief.

## III. The Proposed Notice Fails to Apprise Interested Parties of the Most Relevant and Prejudicial Terms of the Settlements

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Notice is adequate if it "'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d at 114 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)).

Here, the proposed notices do *not* apprise interested parties (including those *excluded from the class*) of the most prejudicial and illegal terms. For example, the proposed notices do not inform interested parties of the injunction applicable to the Secretary of Labor and *all others* swept up in the expansive and illegal bar order. Nor do the notices apprise interested parties that the proposed settlements violate the documents and instruments governing the Plan—e.g., the Plan's expressed adoption of the DST Arbitration Agreement, nor do they apprise those interested of their contractual and legally enforceable *right* to individual arbitration. Finally, the notices fail to advise interested parties that the Secretary of Labor, which the Court relies upon as "proof that the Plan participants'

25

interests are being adequately represented," (Dkt. No. 94 at 9), "strongly object[s]" to the proposed settlements.

## **CONCLUSION**

The Motions for Preliminary Approval of Class Action Settlements and for Related Relief should be denied in their entirety. A Proposed Order Denying the Motions for Preliminary Approval is attached for the Court's convenience.

Alternatively, the motions should be held in abeyance pending discovery into the proposed class representatives' compliance with Rule 23.

Dated: January 27, 2021                          Respectfully submitted,

THE KLAMANN LAW FIRM

 /s/ Andrew Schermerhorn
Andrew Schermerhorn (admitted pro hac vice)
4435 Main Street, Suite 150
Kansas City, MO 64111
(816) 421-2626
ajs@klamannlaw.com

HUMPHREY, FARRINGTON & McCLAIN
Kenneth B. McClain (not admitted in S.D.N.Y.)
221 West Lexington, Suite 400,
P.O. Box 900
Independence, MO 64051
Telephone: (816) 836-5050
kbm@hfmlegal.com

KAPKE & WILLERTH
Ted Kapke (not admitted in S.D.N.Y.)
Mike Fleming (not admitted in S.D.N.Y.)
3304 N.E. Ralph Powell Road
Lee's Summit, MO 64064
(816) 461-3800
ted@kapkewillerth.com
mike@kapkewillerth.com

WHITE, GRAHAM, BUCKLEY & CARR

26

William Carr (not admitted in S.D.N.Y.)
Bryan T. White (not admitted in S.D.N.Y.)
19049 East Valley View Parkway
Independence, MO 64055
(816) 373-9080
wcarr@wagblaw.com
bwhite@wagblaw.com

*Attorneys for the Arbitration Claimants*

27