# EXHIBIT D

## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Stephanie Ostrander, et al., individually and for their individual account damages on behalf of the DST Systems, Inc., 401(k) Profit Sharing Plan, | |
| *Plaintiffs*, | Case No. 4:20-CV-00973-BCW |
| v. | |
| DST Systems, Inc., | |
| *Defendant*. | |

## PLAINTIFFS' OPPOSITION TO DST SYSTEMS, INC.'S MOTION TO DISMISS THE COMPLAINT AND, <u>IN THE ALTERNATIVE, ITS MOTION TO TRANSFER</u>

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................ iv

Preliminary Statement ............................................................................................ 1

Argument ................................................................................................................ 9

   I.   The First-Filed Rule Does Not Apply.............................................................. 9

   II.  The Case Should Not be Transferred to the Southern District of New York .................. 11

   III. Plaintiffs' Counsel are *Not* Conflicted.......................................................... 14

Conclusion ............................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062 (N.D. Cal. 2020) ............................................ 1

*Bd. of Trustees, Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253 (E.D. Va. 1988) ....................................................................................................... 11

*Brown v. SunTrust Banks, Inc.*, 66 F. Supp. 3d 81 (D.D.C. 2014) ................................................. 12

*Central States, et al. v. David Sloan*, 714 F.Supp. 943 (N.D.Ill.1988) .......................................... 11

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ......................... 9

*Contract Freighters, Inc. v. CRST Van Expedited, Inc.*, No. 04-5088-CV-SW-GAF, 2005 WL 2291222 (W.D. Mo. Sept. 20, 2005) ........................................................................................... 9

*Cusack-Acocella v. Dual Diagnosis Treatment Ctr., Inc.*, 2019 WL 7172597 (C.D. Cal. Oct. 7, 2019) ............................................................................................................................................ 3

*Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. 2019) ............................................ 3

*DuCharme v. DST Sys., Inc.*, No. 4:17-CV-00022-BCW (W.D. Mo.) ............................................. 1

*Evans v. J.P. Morgan Chase Bank, N.A.*, No. 13-00686-CV-W-BP, 2014 WL 12600285 (W.D. Mo. Feb. 12, 2014) ....................................................................................................................... 10

*Flynn v. Veazey Constr. Corp.,* 310 F.Supp.2d 186 (D.D.C.2004) ................................................ 11

*Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, No. CIV. 07-886-AS, 2008 WL 410088 (D. Or. Feb. 12, 2008) .............................................................................................. 12

*In re Computer Scis. Corp. ERISA Litig.*, 2008 WL 7527874 (C.D. Cal. Sept. 2, 2008) ............... 3

*Int'l Painters & Allied Trades Indus. Pension Fund v. Tri–State Interiors, Inc.,* 357 F.Supp.2d 54 (D.D.C.2004) ........................................................................................................................... 11

*Jalloh v. Underwood*, 300 F. Supp. 3d 151 (D.D.C. 2018) ............................................................. 13

*John Blair Commc'ns, Inc. Profit Sharing Plan v. Telemundo Grp., Inc. Profit Sharing Plan*, 26 F.3d 360 (2d Cir. 1994) ........................................................................................................... 3

*Martin Marietta Materials, Inc. v. City of Greenwood, Mo.*, No. 06-697-CV-W-W, 2008 WL 4832638 (W.D. Mo. Sept. 4, 2008) ................................................................................... 8, 14

*McFarland v. Yegen*, 699 F. Supp. 10 (D.N.H. 1988) ..................................................................... 12

*Medicap Pharmacies, Inc. v. Faidley*, 416 F. Supp. 2d 678 (S.D. Iowa 2006) .............................. 13

*Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 666 F.3d 68 (2d Cir. 2011) 3

*Nat'l Shopmen Pension Fund, v. Stamford Iron & Steel Works, Inc.*, 999 F. Supp. 2d 229 (D.D.C. 2013) ......................................................................................................................................... 11

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .............................................................................. 8

*Smith v. Stockwell Const. Co.*, No. 10-CV-608S, 2011 WL 6208697 (W.D.N.Y. Dec. 14, 2011) 3

*United Food & Commercial Workers Union v. Schaufler*, 1988 WL 79632 (N.D. Ill. July 25, 1988)....................................................................................................................... 13

*VetBridge Prod. Dev. Subsidiary I (NM-OMP), LLC v. NewMarket Pharm., LLC*, No. 5:18-CV-06147-BCW, 2018 WL 6331708 (W.D. Mo. Dec. 4, 2018)...................................................... 10

# PRELIMINARY STATEMENT

DST is engaged in an unscrupulous and deceitful attempt to whipsaw this Court, *and hundreds of its own employees*, contending first that Plan participants *must* bring their ERISA claims *on their own behalf* and then, having secured this Court's agreement, taking the contrary view that ERISA claims must be resolved through a single, *mandatory* class action. DST's attempt to rewrite history and to nullify this Court's *binding and final order* in *DuCharme v. DST Sys., Inc.*, No. 4:17-CV-00022-BCW (W.D. Mo.), which DST obtained from this Court, represents the height of procedural gamesmanship and forum shopping and reminds counsel of the brazen bait and switch in *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062 (N.D. Cal. 2020).

In *Abernathy*, DoorDash's agreement with its couriers imposed mandatory individual arbitration. When a group of 5,879 couriers complied with their agreements by demanding arbitration, DoorDash balked at the prospect of having to arbitrate with thousands of workers and moved to stay the arbitration proceedings pending final approval of a class action settlement. *Id.* at 1064-65. Judge Willian Alsup refused to countenance the bait and switch, explaining:

> For decades, the employer-side bar and their employer clients have forced arbitration clauses upon workers, thus taking away their right to go to court, and forced class-action waivers upon them too, thus taking away their ability to join collectively to vindicate common rights. The employer-side bar has succeeded in the United States Supreme Court to sustain such provisions. The irony, in this case, is that the workers wish to enforce the very provisions forced on them by seeking, even if by the thousands, individual arbitrations, the remnant of procedural rights left to them. The employer here, DoorDash, faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. No doubt, DoorDash never expected that so many would actually seek arbitration. Instead, in irony upon irony, DoorDash now wishes to resort to a class-wide lawsuit, the very device it denied to the workers, to avoid its duty to arbitrate. This hypocrisy will not be blessed, at least by this order.

The very same admonition should be directed at DST here. Distressed that hundreds of participants in its 401(k) Profit Sharing Plan (the "Plan") have brought ERISA § 502(a)(2) claims *on their own behalf*, DST now falsely asserts that *all* Plan participants, *including Mr. DuCharme*,

must relinquish their contractual right to arbitrate simply because it has decided that it can more cheaply dispose of their claims through an unlawful *mandatory* class action settlement.[1] DST is wrong. Nothing in ERISA nor Rule 23 allows the certification of a mandatory class in derogation of the right of participants to bring a § 502(a)(2) claims *on their own behalf.*

The mandatory, non-opt out settlement, meanwhile, is especially troubling considering a letter that was circulated which appears to have been written either by attorneys for DST at Paul, Weiss, Rifkind, Wharton & Garrison, LLP ("Paul Weiss") or by an employee of SS&C Technologies (DST's parent company). The letter states that lawyers at Paul Weiss are engaged in "very troubling and unethical conduct." (*See* Letter to Robert Atkins, attached hereto as **Exhibit A.**) According to the letter, DST's attorneys, "have taken various unethical actions, and acted collusively with [the *Ferguson*] plaintiffs' counsel, to deceive Judge Carter, Judge Barbara Moses, the participants in the DST retirement plan, and the shareholders of SS&C." *Id.*

Indeed, in *Ferguson v. Ruane Cunniff & Goldfarb, Inc., et al.,* No. 1:17-cv-6685-ALC (S.D.N.Y.), counsel for DST is presently arguing to Judge Carter that Plan participants "have no individual interests in their claims at all" (*see Ferguson*, ECF No. 185 at 6), while failing to disclose that DST's *independent ERISA counsel*, Dechert LLP ("Dechert"), has concluded the opposite. (*See* Letter from Andrew J. Levander, attached as **Exhibit B**). After carefully evaluating ERISA, the terms of the Plan,[2] and the Supreme Court's holding in *LaRue v. DeWolff, Boberg &*

---

[1] The combined total of the settlements reached by the parties in *Ferguson* is purportedly for $79,000,000, *less* attorneys' fees (up to 25% requested) and administrative and other costs. In other words, if approved, the total of the settlement in *Ferguson* to be distributed to the Plan will be $59,250,000. The Plan, however, lost between *$140,000,000 and $290,000.000.* Thus, the settlement in *Ferguson* is wholly inadequate.

[2] The Plan expressly states that "any and all claims arising out of or related to the Plan…***are subject to mandatory arbitration and class action waiver*** as provided under" the DST Arbitration Policy. (*DuCharme*, ECF No. 39-2 at ¶ 9.11.) According to DST, the Plan's adoption of the Arbitration Agreement "incorporates the terms of DST's Arbitration Agreement ***into the Plan***, and thereby ***explicitly binds the Plan to the terms of that Agreement***." (*DuCharme*, ECF No. 47 at 2.) "[I]t is an expression." according to DST, "of ***intent by the Plan to be bound by the Arbitration Agreement***, just as Mr. Ducharme is bound by it." (*Id.*) DST continued: "neither the Arbitration

*Associates, Inc.,* 552 U.S. 248 (2008), Dechert—DST's *non-litigation* counsel—concluded that individual Plan participants *may* pursue and recover Plan losses in their own *individual* accounts.[3]

Dechert is right. In *LaRue,* the Court determined that participants in a defined contribution ERISA plan—such as the DST Profit Sharing Plan—can bring ERISA § 502(a)(2) claims *on their own behalf*. 552 U.S. 248 (2008).[4] This is true even though such actions are still "technically brought on behalf of the Plan." *Cusack-Acocella v. Dual Diagnosis Treatment Ctr., Inc.*, 2019 WL 7172597, at *12 (C.D. Cal. Oct. 7, 2019). In other words, while the claims of individual Plan participants may be styled as "on behalf of the Plan," the Supreme Court has recognized that such claims are *inherently individualized* when brought in the context of a defined contribution plan like that at issue here. *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019) ("Although § 502(a)(2) claims seek relief on behalf of a plan, the Supreme Court has recognized that such claims are inherently individualized when brought in the context of a defined contribution plan like that at issue.").[5] Thus, the law clearly permits "that a defined contribution plan participant can bring a § 502(a)(2) claim for the plan losses in her own individual account." *Id.*

---

Agreement nor the Amendment prohibits Mr. Ducharme or any other party to the Arbitration Agreement from arbitrating a breach of fiduciary duty claim in connection with purported losses to their individual accounts." (*Id.*)

[3] DST's chicanery knows no end. On August 7, 2020, DST entered into a settlement agreement with 15 Plan participants who had filed *individual* claims in arbitration to recover the losses caused to their *individual* accounts, just as they were compelled to by *this Court. DuCharme*, ECF No. 50 (Order compelling individual arbitration). However, when the settlement proceeds were transmitted to Fidelity Investments, the Plan Trustee, DST directed Fidelity *not* to deposit the settlement funds into the claimants' individual accounts. Instead, DST asserted that the settlement proceeds should be distributed across the *entire Plan*, to more than 9,000 individuals. Dechert was hired by the Advisory Committee of the DST Profit Sharing Plan to resolve whether DST's litigation position was legally justified. After "extensive research and consultation with ERISA experts," Dechert concluded that it was not.

[4] *See also In re Computer Scis. Corp. ERISA Litig.*, 2008 WL 7527874, at *2 (C.D. Cal. Sept. 2, 2008) (holding that, in accord with *LaRue*, participants in a defined contribution plan can bring ERISA § 502(a)(2) claims *on their own behalf*); *Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 666 F.3d 68, 71 fn. 1 (2d Cir. 2011) (observing that the Supreme Court "made clear" in *LaRue* that "ERISA permits an individual plan member to bring a breach of fiduciary duty claim against the administrator of a defined contribution plan"); *Smith v. Stockwell Const. Co.*, No. 10-CV-608S, 2011 WL 6208697, at *4 fn, 3 (W.D.N.Y. Dec. 14, 2011) (holding that while plaintiff participants were *previously* required to bring claims on behalf of the *entire* plan, that "requirement changed for plaintiffs seeking to recover under a defined contribution plan following the Court's decision in *LaRue*.").

[5] *See also John Blair Commc'ns, Inc. Profit Sharing Plan v. Telemundo Grp., Inc. Profit Sharing Plan*, 26 F.3d 360, 363 (2d Cir. 1994) (holding that in a defined contribution plan, "an individual plan member holds his or her own

The United States Department of Labor (the "DOL") agrees. When DST joined an effort to stay the very arbitrations that *it compelled*, the DOL opposed the effort, pointing out that "*LaRue* clearly established the right of an individual participants to seek relief under 29 U.S.C. § 1109(a) to recover plan losses that resulted in lowering the value of the individual plaintiff's plan account." *Ruane, Cunniff & Goldfarb Inc., v. Payne, et al.*, 19-cv-11297, ECF No. 40 at 11, 19 (S.D.N.Y.), attached as **Exhibit C**.[6] Then, when DST announced that it had reached a settlement contingent upon the certification of a *mandatory* class, the DOL sent an email to the parties making clear that it supports the right of participants to pursue their own *individual* actions. The Department stated:

> although the Secretary has not intervened in the Ferguson matter (*Ferguson v. Ruane Cunniff & Goldfarb, Inc., et al.*, No. 1:17-cv-6685-ALC (S.D.N.Y.)) regarding the pending class certification motion, that decision against intervention should in no way be understood as support for that motion. As the Secretary made clear in his opposition to Ruane's motion for a preliminary injunction in the *Payne* declaratory action, the Secretary supports the right of all participants to pursue private actions as provided by ERISA Section 502(a)(2) in whatever forum they choose, whether that be federal litigation or arbitration.

(*See* Email from Anna Area, dated August 5, 2020, attached hereto as **Exhibit D**).

More recently, on January 15, 2021, the DOL *did intervene* to notify Judge Carter that it "strongly object[s]" to the settlements proposed in *Ferguson* and reiterated that "all participants have the right to pursue private actions "whether through federal litigation or arbitration." (*Ferguson*, ECF No. 269, January 15, 2021, attached as **Exhibit E**). As the DOL had previously pointed out, ERISA permits that multiple, *individual proceedings* may occur "simultaneously without diminishing the independent rights of action of other plan participants or the Secretary." *Payne*, ECF No. at 8 (citing *Dorman* at 514). "[M]ultiple participants," the DOL asserted, "*can* at the same time seek recovery under ERISA against the same defendants in multiple forums even if

---

account and the eventual benefits received by the plan member are tied exclusively to the level of earnings on those funds during the life of the plan.").

[6] The effort to stay the arbitrations in *Payne* was made after a similar effort in this Court. *See Ruane v. DuCharme, et al.,* 4:18-cv-00650-BCW, ECF No. 1 (W.D.MO.). Both efforts failed.

they allege the same harm to the same Plan assets." *Id.* at 9 (emphasis in the original).[7] In this case, by *enforcing* its class waiver in *DuCharme*, DST *guaranteed* that it would face hundreds, if not *thousands*, of individual, simultaneous proceedings.

Indeed, when DST notified participants of the allegations made *DuCharme* and advised them of the right to initiate their own "*individual*" arbitration proceedings,[8] more than 485 participants chose to file claims in arbitration seeking relief limited to their *individual* accounts. Twelve other participants, including the plaintiffs here, chose to file claims in federal court, also seeking relief limited to their own, *individual* accounts.[9] During the past two years, the arbitration proceedings have steadily progressed through discovery, motion practice and, finally, more than 100 individual arbitration hearings. All the while, DST has made every effort to derail, delay and deny the arbitration claimants an efficient and speedy resolution of their claims. In one arbitration, Arbitrator John Vering was especially critical of DST for having taken "varying and inconsistent positions to prevent Claimant and other Plan participants from ever seeing a hearing." *See Payne v. DST Systems, Inc.,* AAA 01-18-0003-0418, Final Award, at 13, attached as **Exhibit G**.

> In the beginning, DST enforced the arbitration agreements and compelled their employees to resolve these claims via individual arbitrations. When Claimant's Counsel filed a class action in January 2017, DST moved to compel arbitrations, arguing that "because all of Mr. DuCharme's claims are subject to arbitration, and pursuant to Federal Rule of Civil Procedure 12(b)(6) this Court should dismiss the Amended Complaint with prejudice." *See DuCharme v. DST Systems Inc.*, Case No. 17-cv-00022-BCW, ECF No. 27. DST argued its class action waiver was binding and enforceable and "Mr. DuCharme or any other party to the Arbitration Agreement" was free to "arbitrate a breach of fiduciary duty claim in connection with purported losses to their individual accounts." *DuCharme*, ECF No. 47. The court agreed and held the class action waiver prevented Mr. DuCharme from acting in

---

[7] If there were any doubt about the futility of DST's efforts in New York, Judge Carter has explicitly stated that the DOL's "active role in this litigation" is "proof that the Plan participants' interests are being adequately protected." (*Ferguson*, ECF No. 94 at 9.) The DOL *strongly opposes* the certification of a class and accurately asserts that the Plan fiduciaries "caus[ed] major losses to the Plan that *far exceed* the proposed settlement amounts." (*Ferguson*, ECF No. 269, emphasis added.)

[8] *See* "Notice of Right to Assert Claim," attached at **Exhibit F**.

[9] *See e.g., Mendon, et. al. v. SS&C Technologies Holdings, Inc., et. al.*, 1:18-cv-10252-ALC (S.D.N.Y.); *Canfield et. al. v. SSC Technologies Holdings, Inc., et. al*., 18-cv-08913-ALC (S.D.N.Y.).

a representative capacity on behalf of a class or collective action. *DuCharme*, ECF No. 57. As for his individual claims, the Court held "to the extent DuCharme alleges a § 502(a)(2) [claim] as an individual," his claims are arbitrable. *Id.*

And so, Claimant's Counsel began filing individual arbitrations — hundreds of them. Mr. Payne's was scheduled to be one of the first ones to have a hearing. Hence, not only did Claimant's Counsel need to prepare Mr. Payne's case for hearing by seeking written discovery, reviewing documents, taking depositions, and hiring expert witnesses, but they needed to do all of this while also scheduling and pursuing hundreds of other arbitrations. There can be no doubt successfully navigating so many arbitrations demands extremely skilled counsel.

The demands on Claimant's Counsel grew when, just as the arbitrations were set to be heard, DST reversed its prior position and sought to escape the arbitration agreements. It argued in the Southern District of New York that a mandatory class action was the only way to resolve these disputes. DST also moved to stay these arbitrations, first in court and when that failed in each arbitration individually as the hearing date approached. Claimant's Counsel were forced to prepare for hundreds of arbitrations, oppose a mandatory class action, and oppose motions to stay. In addition, DST unsuccessfully argued in this arbitration that Claimant's counsel should be disqualified in this arbitration.

And yet, Claimant's Counsel prevailed for Mr. Payne. They secured for him a settlement for 100% of the losses to his retirement account.[10]

*Id.* at 13-15.

Other arbitrators were just as critical. For example, in the matter of *Schellenberger v. DST Systems, Inc., et al.*, AAA 01-19-0001-9331, Arbitrator Richard T. Seymour stated:

While it is true that the DST Respondents wrote the [arbitration] provision, it is also true that the employees who did not opt out are supposed to be treated in law as if they also bargained for this. It is not enough that DST Respondents now have second thoughts in light of a settlement they might like; they are only half of the contracting parties and have the same obligation as employees to abide by their deal.

The DST Respondents argue that all claimants are suing for an injury to the plan, and their recoveries go back to the plan, so certification is proper. Claimant points out that this is true in form only, that the Plan is a defined contribution plan and not a defined benefit plan, and that all claimants are the beneficial owners of the payments of damages recovered, because they go straight to the individual retirement accounts of the claimants.

I find that Claimant has the better of the argument on this issue. Moreover, if the DST Respondents' argument were accepted, there would have been no need for a class action waiver in the first place.

---

[10] Arbitrator Vering found that "[h]ad a mandatory class been approved it would have precluded Mr. Payne from recovering 90% of his damages." *Payne* Award at 12.

*Schellenberger*, Order No. 10 at 10-11, attached as **Exhibit H**.

Justice Robert P. Young, Jr., found it "supremely troubling that DST, having contractually *precluded* employees … from seeking class action remedies in its Arbitration Program Agreement, supports in federal court a mandatory class – a class which, not incidentally, DST just happens to have reached a tentative settlement with the putative class representatives." *See Murphy v. DST Parties,* AAA 01-19-0001-2782, Order at 7, attached as **Exhibit I**. Justice Young stated that, "[i]n simple terms, this is a DST end run around the express terms of the DST Arbitration Program and Agreement: DST is actively pursuing a class remedy it has forbidden to [Plan participants]." *Id.*

In *Jacqueline Davis v. DST Systems, Inc*., AAA 01-18-0004-3644, a panel of arbitrators ruled that since "[i]t is undisputed that Claimant herein is a signatory to a binding, enforceable arbitration agreement that PRECLUDES Claimant from becoming a part of a class action against DST," and since "DST has previously successfully forced Claimants' Counsel to file approximately 500 separate arbitration actions by an Order from another U.S. District Court[,]" it is clear that:

> the Arbitration provision was asserted by DST to be indestructible until the moment that it became advantageous to DST to grapple with the claims as a class action rather than within individual arbitrations. Although perplexing to grasp, it appears that if the DST logic was extended to its logical conclusion, then **NO** arbitration agreement in the context of an ERISA plan would be valid. This seems to fly in the face of the Supreme Court's *Epic* decision and seemingly settled judicial precedent. It would also appear to render any arbitration agreement in an ERISA Plan illusory.

*See J. Davis* Order at 2, attached as **Exhibit J**. The panel called the settlement reached by the *Ferguson* plaintiffs "bothersome" because it suggests that DST is motivated "by its own interests rather than those of the putative class." *Id.*

Arbitrator W.H. Levit, Jr., found it "disingenuous at best for DST to argue…that it's arbitration program should be turned upside down and swept up in the putative mandatory, non-

opt out class certification and settlement pending…in *Ferguson.*" *See Majernik v. DST Systems, Inc.,* AAA 01-19-0001-9662, Order at 3, attached as **Exhibit K**. Arbitrator Levit reasoned that:

> DST's arbitration program under which these cases were commenced precludes class and collective actions either in a judicial or arbitral forum. If there were any doubts about the validity and enforceability of such agreements, the U.S. Supreme Court put them to rest 2 years ago in *Epic Systems.* In fact, DST was successful in the Western District of Missouri in defeating Plan participants' efforts to assert their claims in a class action and requiring them to pursue them individually in arbitration. Accordingly, it ill behooves DST now to be espousing the exact opposite position here.

Justice Robert Crowley went so far as to rule that DST "should be judicially estopped from seeking certification after successfully resisting such certification for participants in this same plan on behalf of DST in the Western District of Missouri." *See Parrott v. DST Systems, Inc.*, AAA 01-19-0001-9375, Order, attached as **Exhibit L**. Indeed, since DST vigorously compelled individual proceedings in *this Court*, it should be prohibited "from deliberately changing positions according to the exigencies of the moment." *Martin Marietta Materials, Inc. v. City of Greenwood, Mo.*, No. 06-697-CV-W-W, 2008 WL 4832638, at *2 (W.D. Mo. Sept. 4, 2008) (internal quotation omitted). DST's new enthusiasm for class-wide adjudication is clearly inconsistent with its earlier position, it was successful in persuading this Court to accept its earlier position, and acceptance of DST's new position would create the undeniable perception that the Court was misled. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (describing the factors for applying judicial estoppel).

In fact, in *Ducharme*, DST successfully argued *to this Court* that Plan participants may bring ERISA § 502(a)(2) claims "*on an individual basis*" to recover losses "*to their individual accounts.*" *See DuCharme*, ECF Nos. 28, 47, 57. Then, when Ms. Ostrander tried bringing a class action that resembled the *Ferguson* case, DST accused her of "seek[ing] to sidestep thousands of indisputably enforceable arbitration agreements by ignoring the decisions" in both *DuCharme* and in *Cooper v. Ruane Cunniff & Goldfarb, Inc.*, Case No. 1:16-cv-01900-WHP (S.D.N.Y.).

*Ostrander, et al. v. DST Systems, Inc.*, 4:17-CV-00747-BCW ("*Ostrander I*"), ECF No. 31 at 1, attached as **Exhibit M**.

> That [Ms. Ostrander's] proposed class would include the named plaintiffs in both dismissed actions, James DuCharme and Clive Cooper, even though two federal district courts, including this Court, already have found that the Arbitration Agreement barred those very plaintiffs from pursuing virtually identical actions, demonstrates the futility of Plaintiff's position. What is more, Plaintiff's proposed class simply ignores the fact that both former plaintiffs (and all other participants who are subject to the Arbitration Agreement) not only waived their rights to "assert claims on behalf of multiple [participants] or as a class action or collective action" but also waived their rights to "have a claim asserted on [their] behalf by another person as a class representative or otherwise."

DST even invoked the doctrine of collateral estoppel, arguing that since the Court had already compelled arbitration in *DuCharme*, Ms. Ostrander could not "challenge the validity of the Arbitration Agreement or its applicability to the claims at issue here." *Id.* at 10 (citing *Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996). And so, after having first tried to intervene in the Southern District of New York (*Ferguson* ECF Nos. 53, 94), Plaintiffs now bring their claims here, the only proper venue, to recover losses that were sustained in their *individual Plan accounts*.[11]

## ARGUMENT

### I.   The First-Filed Rule Does Not Apply

"The duty of a District Court [is] to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (citation omitted). Abstention, or "[a]bdication of the obligation to decide a case[]" can be justified only in "extraordinary" and "exceptional  circumstances." *Id.* Application of the first-filed rule, for example, is proper only when careful "factual analysis"[12] demonstrates that "the interests of the

---

[11] Obviously, this case is *not* the same as *Ferguson* or *Ostrander I*. Unlike in *Ferguson*, the Plaintiffs here do *not* wish to abandon their claims against DST or to forcibly settle the *individual* claims of more than 9,000 absent Plan participants. Instead, the Plaintiffs wish to proceed *individually*, for their *own* damages, and without diminishing the independent rights of action of other plan participants.

[12] *Contract Freighters, Inc. v. CRST Van Expedited, Inc.*, No. 04-5088-CV-SW-GAF, 2005 WL 2291222, at *2 (W.D. Mo. Sept. 20, 2005) ("A district court must therefore engage in a careful factual analysis before enjoining the parties from prosecuting a second-filed action.").

parties [are] aligned" and "[t]he spectre of duplicative efforts and costs and of inconvenience to the parties, together with the waste of judicial resources inherent in parallel litigation." *VetBridge Prod. Dev. Subsidiary I (NM-OMP), LLC v. NewMarket Pharm., LLC*, No. 5:18-CV-06147-BCW, 2018 WL 6331708, at *2 (W.D. Mo. Dec. 4, 2018) (holding that, for application of the first-filed rule, "the interests of the parties must be aligned").

Here, the interests of the *Ferguson* plaintiffs are ***not*** aligned with those of the Plaintiffs. While the *Ferguson* plaintiffs have *abandoned* their efforts to litigate their claims against DST (*Ferguson*, ECF No. 256) and seek to force a settlement of the *individual* claims of more than 9,000 absent Plan participants for *significantly less* than the total amount of damages sustained by each individual participant (*id.*, ECF No. 257),[13] the Plaintiffs here wish to *pursue* their claims against DST for the full amount damages sustained in their *individual Plan accounts* (*plus* attorneys' fees and costs). They join the DOL in support of the right of *all* participants to pursue private actions in whatever forum they choose. They do so in reliance upon, *and in accordance with*, this Court's Order in *DuCharme*, the Supreme Court's decision in *LaRue*, the judgment of the DOL, and the conclusion reached by DST's own independent ERISA counsel. Additionally, because the *Ferguson* plaintiffs have abandoned their efforts to litigate against DST, there is not even the spectre of duplicative efforts or costs.

For these reasons, *Evans v. J.P. Morgan Chase Bank, N.A.*, No. 13-00686-CV-W-BP, 2014 WL 12600285 (W.D. Mo. Feb. 12, 2014), is inapposite. *Evans* involved a putative *litigation* class action and a parallel joinder action alleging nearly identical claims. Critically, there was no attempt by the defendant to sidestep thousands of indisputably enforceable arbitration agreements, or to

---

[13] The *Ferguson* case is *not* a class action. On April 10, 2020, the *Ferguson* plaintiffs filed a motion to amend to assert class claims. (*Ferguson*, ECF No. 124.) That motion *remains pending*. Meanwhile, on July 10, 2020, DST filed a motion for preliminary injunction to stay all other proceedings. (*Ferguson*, ECF No. 161.) That motion was ***denied***. The most recent motion to approve a mandatory class was filed on January 12, 2021. (*Ferguson*, ECF Nos. 265, 266.)

hoodwink the federal judiciary by deliberately changing its position after succeeded in compelling hundreds of individual actions, or to shop a *mandatory* class action settlement to counsel willing to settle for a pittance. In *Evans*, there were simply two parallel actions seeking to *litigate* the same claims in two separate venues. *Evans* at *2.

Finally, the interest of justice and the balance of convenience, which are to be analogized to the factors under 28 U.S.C. § 1404(a), weigh heavily against transfer, as shown below.

## II.      The Case Should Not be Transferred to the Southern District of New York

"ERISA contains a special venue provision explicitly authorizing plaintiffs to bring actions 'in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found.'" *Nat'l Shopmen Pension Fund, v. Stamford Iron & Steel Works, Inc.*, 999 F. Supp. 2d 229, 232–33 (D.D.C. 2013) (quoting 29 U.S.C. § 1132(e)(2)." "ERISA's special venue provision reflects Congress' intention to protect the financial integrity of such pension funds by allowing these funds to bring all collection suits *in their home districts*." *Id.* (Emphasis added.) Accordingly, courts are to give "*special weight* to a plaintiff's choice of forum in ERISA cases." *Flynn v. Veazey Constr. Corp.,* 310 F.Supp.2d 186, 193 (D.D.C.2004) (emphasis added). *See also Bd. of Trustees, Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1257 (E.D. Va. 1988) ("plaintiffs' venue selection under ERISA is arguably entitled to somewhat greater deference than that typically accorded plaintiffs' choice of forum"). Indeed, "[a] defendant requesting a transfer of venue in an ERISA case filed in the pension fund's home district faces an uphill battle, as the defendant must persuade the court that either the convenience of the parties or the witnesses, or the interest of justice, *strongly outweigh* the *substantial deference* given to a plaintiff's choice of forum in these cases." *Int'l Painters & Allied Trades Indus. Pension Fund v. Tri–State Interiors, Inc.,* 357 F.Supp.2d 54, 58 (D.D.C.2004) (emphases added). *See also Central States, et al. v. David Sloan*, 714 F.Supp. 943 (N.D.Ill.1988)

("Congress has given the ERISA plaintiff a choice, and that choice is entitled to our deference unless clearly outweighed by other factors."). In this case, *neither factor* outweighs the substantial deference given to the Plaintiffs' choice of forum.

First, there is no disputing that (1) the DST Retirement Plan is administered in Kansas City, Missouri, (2) DST's alleged breach of ERISA took place in Kansas City, Missouri, and (3) DST resides at its corporate headquarters on 11th Street in Kansas City, Missouri.[14] Thus, this District is the *only* proper district under ERISA's special venue provision. In fact, this District is the *only* proper venue under *either* 29 U.S.C. § 1132(e)(2) *or* 28 U.S.C. 1391(b)(2) since alleged breaches of fiduciary duty under ERISA occur *where the plan is administered. See Brown v. SunTrust Banks, Inc.*, 66 F. Supp. 3d 81, 85 (D.D.C. 2014) ("Because the Plan is administered in Georgia, the alleged breaches of fiduciary duty occurred there and the claims arose there."); *Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, No. CIV. 07-886-AS, 2008 WL 410088, at *8 (D. Or. Feb. 12, 2008) ("if the claim is for breach of a fiduciary duty, the breach occurs where the defendants acted or failed to act in accordance with their duties"); *McFarland v. Yegen*, 699 F. Supp. 10, 13 (D.N.H. 1988) ("A breach of fiduciary duties, however, can occur only where the defendants commit or fail to commit the actions that their duties require. In this case, that is in New Jersey, where the trustees met and the ESOP was managed."). Indeed, in *Ferguson*, venue is proper in New York only because *Ruane* maintains its headquarters and principal place of business in the Southern District of New York. *See Ferguson* ECF No. 110 at 3; *Ferguson* ECF No. 9 at 8. But here, Ruane is *not* a defendant. Therefore, the Southern District of New York is not even among the *plausible* places to litigate this case. 29 U.S.C. § 1132(e)(2).

---

[14] Meanwhile, the Plaintiffs reside in Kansas City, Missouri (Monteleone), Overland Park, Kansas (Ostrander), and Florida (Otis, Kellogg, Kellogg). Thus, *none* of the parties reside in *or even near* New York.

Second, as for the convenience of the witnesses, the Court must give special consideration only to the convenience of "*the plaintiff's witnesses*, since as [courts] have stated, the plaintiff's preferred choice of forum must be given weight." *United Food & Commercial Workers Union v. Schaufler*, 1988 WL 79632, at *1 (N.D. Ill. July 25, 1988). Here, the Plaintiffs' witnesses, *all of whom have already been deposed*, reside either in Missouri (Jerry Lavin, Phillip McKnight) or Colorado (Beth Sweetman). *None* of the witnesses reside in New York. Accordingly, this factor *cannot* weigh in favor of transfer to New York.[15]

And, while DST asserts that Plaintiffs' claims "hinge on the actions of Ruane," it omits that more than 35 Arbitration Claimants have successfully tried their claims against DST, only, *in Missouri* without deposing or calling a single witness from Ruane. Likewise, DST has defended more than 100 arbitrations *in Missouri* without once calling a witness from Ruane. This is because the claims against DST *do not* turn on the actions of Ruane; they turn on the acts and omissions *of DST,* which resides in Missouri and which conducted all of its activities in Missouri. In any event, Ruane's activities, to the extent they are relevant, are firmly and conclusively established through documentary evidence that has been produced to both DST and Plaintiff's counsel *in Missouri*.[16]

Finally, in the interest of justice, the Court must deny transfer to New York. The Plaintiffs here were guided by this Court's Order in *DuCharme* and seek to have their **own** day in court. Their right to individual relief has now been confirmed by both the Department of Labor *and* by DST, *itself. Payne*, ECF No. 40 at 11, 19 ("*LaRue* clearly established the right of an individual participant to seek relief under 29 U.S.C. § 1109(a) to recover plan losses that resulted in lowering

---

[15] For what it is worth, DST has not named *a single* witness located in New York nor has it offered any evidence that such witnesses would be unwilling to testify in Missouri. *Medicap Pharmacies, Inc. v. Faidley*, 416 F. Supp. 2d 678, 687 (S.D. Iowa 2006) ("The party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover.").

[16] Courts have also "repeatedly explained that even if a substantial part of the events in a case took place in one district, a plaintiff may still file suit in another district if a substantial part of the events *also* took place there." *Jalloh v. Underwood*, 300 F. Supp. 3d 151, 155 (D.D.C. 2018) (emphasis in the original).

the value of the individual plaintiff's plan account."); Letter, Ex. B. If DST now succeeds in extinguishing the right of the Plaintiffs to proceed with their individual claims simply because its *litigation attorneys* have decided that they can more cheaply resolve the case through a class action (while hiding what DST's *non-litigation* attorneys have concluded), it will make a mockery of the notion that Federal Courts are fair and impartial arbiters of the truth, or that arbitration agreements and class action waivers are truly bilateral and conscionable. It will lead, instead, to the inexorable conclusion that Courts are committed to protecting large corporations, *even from themselves*. Employers will finally have succeeded in forcing arbitration and class-action waivers upon their employees without even having to honor their side of the bargain.

In short, DST *cannot* be permitted to change its position according to the exigencies of the moment, *Martin Marietta Materials*, 2008 WL 4832638, at *2, and *must* cease making false and misleading statements in its continuing effort to undermine the integrity of the judicial process.

## III. Plaintiffs' Counsel are *Not* Conflicted

DST predicated a motion for disqualification on the argument that Plaintiffs' counsel abandoned pre-2014 allegations to protect certain of their clients. Not once, however, has DST cited any facts in any of the 100+ proceedings to support its contention that the claims of Plan participants would be "sacrificed" by identifying the period of liability as between 2014 and 2016. In fact, the evidence shows that by identifying the period of liability as 2014 to 2016, Plaintiffs' counsel pursue the theory most likely to maximize the recovery of *all* of their clients. Indeed, to sue over pre-2014 conduct would harm the Plan participants. This is because the Plan performed excellently before 2014, so the gains made prior to 2014 net out any damages for the decline in value between 2015 and 2016. In other words, if one broadens the scope of liability to the period before 2014, the Plaintiffs' damages disappear. This is explained in detail in a Motion to Reconsider pending before Judge Carter. *Canfield*, ECF Nos. 61, 74, attached as **Exhibits N** and

**O**. Thus, DST's motion to disqualify was a stunt and a ploy to gain a tactical litigation advantage. Not a single arbitrator has accepted DST's assertion and each has permitted Plaintiffs' counsel to proceed in more than 100+ hearings without impediment. DST, itself, has continued to negotiate with Plaintiffs' counsel, confidently settling more than a dozen individual arbitrations for amounts that greatly exceed the net recovery that those same individuals would receive from the purported settlements reached by the *Ferguson* plaintiffs. With all due respect, Judge Carter erred (and is presently considering a motion for reconsideration). We believe that when he considers the facts, he will reverse himself.

Each of the Arbitrators, of course, who have considered the factual record, have easily understood this. In *Chris Davis v. DST Systems Inc.*, AAA #01-18-0004-3594, Arbitrator David M. Tenner found that "Claimant's counsel have and will continue to zealously and professionally advocate for their client here, *without any divided loyalty*. In fact, it could be argued that Claimant's counsel in this arbitration have more zealously advocated for their client's interest than the counsel representing the class action plaintiffs in *Ferguson*." *Chris Davis* Order (emphasis added), attached as **Exhibit P.** Meanwhile, Arbitrator Seymour asked DST to produce evidence of its assertion of a conflict at a hearing. *Schellenberger* Order (Ex. G). Not surprisingly, rather than subject its allegations to the crucible of cross examination, DST has elected ***not*** to present evidence of a conflict. This is an obvious acknowledgment by DST that its assertion of a conflict has no basis in fact. Indeed, Judge Patricia Cowett found, in the matter *Sharp v. DST Systems, Inc.*, AAA No. 01-19-0001-9316, that "DST has not met its burden to prove by evidence of the facts here that claimant counsel should be disqualified." Order Denying Stay, attached as **Exhibit Q**.[17]

---

[17] Likewise, in the matter of *J. Davis v. DST Systems, Inc.*, a unanimous panel of three arbitrators found that "Claimant's counsel is *not* disqualified to continue as Claimant Jacqueline Davis' counsel." Order Denying Stay, Ex. I. And, in the matter of *Alicia Andrews v. DST Systems, Inc.*, Arbitrator Eugene K. Hollander *also* did not "perceive that an *actual* conflict exists." Order Denying Stay, attached as **Exhibit R**.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests the Court deny Defendants to Dismiss the Complaint and, in the Alternative, its Motion to Transfer, and for such other relief as the Court deems just and proper.

Respectfully submitted,

THE KLAMANN LAW FIRM

BY:  /s/  *Andrew Schermerhorn*
John M. Klamann  MO 29335
Andrew Schermerhorn  MO 62101
4435 Main Street, Suite 150
Kansas City, MO 64111
Telephone: (816) 421-2626
Facsimile:  (816) 421-8686
jklamann@klamannlaw.com
ajs@klamannlaw.com

KAPKE & WILLERTH
Ted Kapke  MO 52114
Mike Fleming MO 53970
3304 N.E. Ralph Powell Road
Lee's Summit, MO 64064
Telephone: (816) 461-3800
Facsimile:  (816) 254-8014
ted@kapkewillerth.com
mike@kapkewillerth.com

WHITE, GRAHAM, BUCKLEY & CARR
William Carr   MO 40091
Bryan T. White MO 58805
19049 East Valley View Parkway
Independence, Missouri 64055
(816) 373-9080 Fax: (816) 373-9319
bwhite@wagblaw.com

HUMPHREY, FARRINGTON & McCLAIN
Kenneth B. McClain   MO 32430
221 West Lexington, Suite 400,
P.O. Box 900
Independence, Missouri 64051
Telephone: (816) 836-5050
Facsimile:  (816) 836-8966

kbm@hfmlegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2021, I caused the foregoing to be filed with the United States District Court for the Southern District of New York, via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

Dated:  January 21, 2021

/s/ Andrew Schermerhorn
Andrew Schermerhorn